ELIAB W. WELLS, administrator of JAMES WILDER, plaintiff in error, *vs.* MARY C. WILDER, defendant in error.

NOTE. WARNER, C. J. did not preside in this case.

The laws of Georgia allow a widow one year's support for herself and minor children out of the estate of her deceased husband. They do not contemplate that she shall live at the homestead and consume the provisions belonging to the estate, and have a year's support also allowed.

Whenever the widow applies for an assignment of the year's support, she must be charged with the value of what she previously consumed.

Twelve months' allowance to widow and children. Tried before Judge SPEER. Pike Superior Court, April Term, 1867.

This case stood for trial in said Court, on appeal from the Court of Ordinary. It was an application for "the twelve months' allowance for the support of widows and children."

It was caveated by plaintiff in error.

The testimony was as follows:

MARY C. WILDER (the widow applying,) said: James Wilder left six children, four of them minors, three living with me. He had nineteen slaves, four hundred and five acres of land, and considerable personal property. He died January, 1865.

Myself and children have worked hard for a support since his death. Until administration was had, we lived on the estate, (farm) and used what was left there; most of the corn and meat was taken from me. I do not know whether the estate is solvent; it was at the death of my husband.

I sold a horse to pay Dr. Caldwell's bill for medical attention; I sold a mule to get corn to live on; I got $140.00

Wells, Adm'r, *vs.* Wilder.

worth of corn—I disposed of none of it to my son or son-in-law—I was forced to buy corn to keep the stock from perishing. I injured my hand while working to try to keep from selling the stock ; my hand is now disabled, and I fear permanently so. Twelve months after husband's death, caveator applied, as a creditor, to me, about his debt ; I could not have kept the stock alive without selling the mule ; as I could get money for my work, I paid it for the first twelve months. Cannot say how much money I borrowed—more than $100.00. I cannot say how much provisions my husband left, most of it was taken by the soldiers passing by.

The following return of the Commissioners was read in evidence for applicant :

" We, the undersigned, appraisers appointed by the Court of Ordinary of Pike county, to appraise and set apart a sufficiency of the household and kitchen furniture for the use of the widow and minor children of James Wilder, late of said county, deceased, and to appraise and set apart twelve months support for said widow and children, do appraise and set apart all the household and kitchen furniture on hand for the use of said widow and children, viz :

| | |
|---|---:|
| 2 Cows and Calves............................$ | 50 00 |
| 1 two-horse Wagon........................... | 75 00 |
| 30 bushels Wheat............................. | 60 00 |
| 3 pair Plow Gear............................. | 4 00 |
| 1 Corn-Sheller .............................. | 12 00 |
| 1 bay Mare.................................... | 150 00 |
| 2 Mules. .................................... | 275 00 |
| 1 Buggy...................................... | 20 00 |
| 15 head stock Hogs........................... | 50 00 |
| 5 head of Sheep.............................. | 7 00 |
| 1 Cutting-Knife ............................. | 8 00 |
| Cash to be paid out of estate................ | 289 00 |
| | $1,000 00 |

" We, the undersigned appraisers, agree that it will take the foregoing for the widow and minors' support for one year.

ROBERT H. ALLEN,
(Signed)     W. B. BALLARD,
L. J. GREEN, J. P.

"I do certify that the appraisers were sworn to do their duty according to law.

(Signed)　　　　L. J. GREEN, J. P."

The testimony for caveator was as follows:

Dr. J. CALDWELL sworn, said: Deceased left a good many negroes at his death, a widow and at least four children. I can't say what is a reasonable support for such a family. I got a horse from the estate, paid $250.00 for it. My medical bill was $246.00. I tried to get the horse from Wilder in his lifetime, he always refused to sell him, said he intended the horse for his wife. I allowed her $288.00 for the horse.

Wilder was sick two or three months before his death; other members of the family were sick; the main portion of the bill was for Wilder's last sickness. Wilder was a good provider for his family, lived well, in as good style as is usual in the country. Provisions were high about the time and after his death. Soldiers cut down a good deal of the corn the fall before he died in January. Another raid passed after his death. Plaintiff was obliged to buy corn after the corn was taken from her. She has worked hard since her husband's death to support herself and children. In the style in which her husband lived, I do not think $1,000.00 an unreasonable year's support for herself and family. At present prices it would not support them a year. The style of living has changed since the war—half (of what was heretofore spent) is not spent by families. Living is much higher than before the war. The estate is insolvent. Wilder was in bad health several months, then was taken very ill, and lived only five or six days; for the last five days my services were worth $50.00. I stayed with him day and night.

E. W. WELLS, caveator, testified: I am administrator of James Wilder's estate. The estate is appraised at $1,653.50. It is insolvent. I can hardly say what would be a reasonable support for the family for twelve months. I think by economy they could live on $500.00. The estate is under mortgage.

The amount in money awarded by the commissioners to the widow would exhaust the sales of the perishable property, (except what was given her,) and leave only seventy-seven dollars balance in hand arising from this source. The widow has taken her dower, 168 acres of land. It will take all the estate to pay the widow's allowance. If anything is left, I have the oldest claim, and will get it. I have two claims, one older than the mortgage. The actual property set apart for the widow is, by appraisement, valued at $400.00, the money at $289.00, making near $700.00. I think the property is worth the value the commissioners put upon it in setting it apart for the widow. The property sold did not bring the prices it was appraised at.

F. Dismuke, sworn for applicant, testified :

The widow, in her support, after her husband's death, got means outside of the estate. I know of her borrowing some. The land is worth all it is appraised at. The dower is run off on the old land of the estate. The amount set apart by the commissioners will not support the widow and family for twelve months as she lived before her husband's death. It is more expensive to live now than before the war. The appraisement had included the whole property. Mrs. Wilder paid her husband's funeral expenses.

The evidence being closed, counsel for caveator contended, among other things, that the act of 15th December, 1866, " to define and regulate the laws governing the twelve months' allowance for the support of widows and children," was not applicable to this case. The Court charged the jury that said act did apply to this case, and that Mrs. Wilder was entitled to twelve months support from the date of the letters of administration on said estate.

The verdict confirmed said allowance by said commissioners, and judgment was entered accordingly.

The errors assigned by the bill of exceptions are—

1st. Because the Court erroneously held said act of the General Assembly constitutionally applicable to this case; and

2d. Because the verdict was contrary to law and the evidence.

J. Q. A. ALFORD and COBB & JACKSON, for plaintiff in error.

H. GREEN, BOYNTON & DISMUKE, and DOYAL & NUNNALLY, for defendant in error.

HARRIS, J.

As some of the material facts in the record are very indistinct, we send this case back, that it may be submitted to a jury under a charge of the Circuit Judge, to this effect: That the laws of Georgia allow a widow one year's support for herself and children out of the estate of her deceased husband; that the laws do not contemplate that she shall live at the homestead and consume the provisions belonging to the estate and have a year's support *in addition to what she may thus have consumed,* allowed to her; that in all applications for a year's support to be assigned her, she must be held chargeable with the value of what she had previously consumed. The last act of the Legislature does not change the rule laid down in the opinion of Chief Justice Lumpkin, in case of Blassingame *et al.* vs. Rose, 34 vol., p. 418, Ga. Repts., nor do we consider that act as violative of the clause of the State Constitution against retro-active legislation—for the right to a year's support was conferred previous to the rendition of plaintiff's judgment.