## LINSTROTH WAGON CO. v. BALLEW.*

(Circuit Court of Appeals, Fifth Circuit. January 9, 1907.)

No. 1,572.

BANKRUPTCY—ACTION PENDING IN STATE COURT—JUDGMENT—CONCLUSIVENESS.

Before the filing of an involuntary petition, claimant instituted suit in a state court to recover specific personal property alleged to have been purchased by the bankrupt by fraudulent representations, and obtained a writ of sequestration under which the property was seized. Bankruptcy proceedings were then instituted, and the trustee, by leave of the state court, intervened and unsuccessfully defended the suit, in which claimant recovered judgment for the return of the property. *Held,* that the state court's jurisdiction was not lost or in any way affected by the filing of the bankruptcy petition, or by the subsequent adjudication that the buyer was a bankrupt, and that, so far as the property or its proceeds were concerned, the judgment was conclusive on the trustee as a person acquiring an interest pendente lite, though he was not a necessary party.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 319, 322.]

Appeal from the District Court of the United States for the Northern District of Texas.

On July 12, 1904, one W. M. Morgan, who resides and does business in Corsicana, Navarro county, Tex., made his application to the Linstroth Wagon Company, the appellant, at its place of business, in St. Louis, Mo., to buy a lot of its wagons on a credit of four, six, and eight months. Before accepting Morgan's orders, the appellant investigated his commercial standing, and ascertained, from his report and statement made to R. G. Dun & Co.'s Commercial Agency, that he claimed to have assets amounting to $62,604.33, with liabilities amounting to only $23,432.74, and showing that his assets included cash value of stock on hand of $27,980.15, cash value of stock in transit, $6,000; accounts and bills receivable considered good, $26,732, and real estate of the value of $4,000, over and above exemptions. His liabilities consisted of amounts due upon open accounts, $200.38; for merchandise closed by notes, $22,632.36; loans from bank, $600. Thereupon, and relying on the said statement so made by Morgan, his orders for 50 wagons on the terms proposed were accepted and the goods were shipped to him to Corsicana, Tex., and to Ennis, Tex. On August 10, 1904, he executed and delivered to appellant his notes for the specified payments. On or about October 27, 1904, the appellant received an invitation from Morgan to attend a creditors' meeting at Corsicana on the 8th of November, following. Appellant then began investigations, which satisfied it that the statements made by Morgan to R. G. Dun's Commercial Agency were false, and fraudulently made for the purpose, and with the intention of establishing a false basis of credit, and were made with the fraudulent intent to deceive the commercial world generally, and the appellant in particular, and that Morgan, at the time said statements were made, was insolvent and his liabilities largely exceeded his assets. As soon as appellant discovered the fraud perpetrated upon it, it elected to rescind the contract of sale, and on November 7, 1904, brought suit in the proper state court against Morgan, and obtained writs of sequestration for the seizure of the goods to be held subject to the order of the court, and prayed judgment for the wagons, for costs and for general relief. One of these writs of sequestration was executed immediately, by seizing the wagons found in Navarro county. Two days after the bringing of the suit by the appellant in the state court, as just recited, certain creditors of Morgan presented an involuntary petition in bankruptcy against him in the bankruptcy court for the district which embraced Morgan's residence, and on the following day, to wit, November 10th, made an application

* Rehearing denied February 19, 1907.

to the referee for the appointment of a receiver to take possession of the property belonging to the bankrupt's estate until a trustee could be appointed and had qualified. Such receiver was immediately appointed, and took possession of the bankrupt's estate, including the goods claimed in the appellant's suit and on some of which the writ of sequestration to the sheriff of Navarro county had been levied. On December 13th the receiver returned an inventory of all the property belonging to the bankrupt estate, as far as the same had then come to his knowledge, including therein the goods claimed by the appellant, and on January 4, 1905, the receiver applied for an order to sell all of the property free from incumbrances, of which application notice was duly given to all the known creditors and parties in interest to show cause, if any there be, why the sale should not be made. On December 31, 1904, W. M. Morgan & Bro. were duly adjudicated bankrupts. Pending the giving of the notice of the application for sale, the first creditors' meeting was held on January 23, 1905, at which meeting the appellee, who resided in Corsicana, Tex., was appointed trustee, and on the same day was, as such trustee, ordered to sell all of the property which had been so inventoried by the receiver. On February 11, 1905, the appellant, on leave, amended its petition in the state court, by showing to the court what had been done under the sequestration writs and adding the following averment: "Plaintiff is informed and believes and here charges that subsequent to the levy and seizure of the wagons by the sheriff of this county (Navarro) and subsequent to the time when the writ to Ellis county should have been levied, certain of the creditors of defendant W. M. Morgan filed a petition in the United States District Court at Dallas, Tex., to have him adjudged a bankrupt, and that thereafter said Morgan was adjudged a bankrupt by said court, and the defendant. Ballew, has been appointed trustee for his estate, and is now as such trustee in the possession of all of said wagons here sued for, claiming same as a part of the said Morgan's estate. Plaintiff now aks that said Ballew, trustee in bankruptcy, be made a party hereto, and that on trial it have judgment for its said wagons against both Morgan and Ballew. It further prays for costs and general relief." On this amended petition there is indorsed: "I hereby accept service of the above petition, waive issuance of citation and enter my appearance at March term, February 11, 1905. [Signed] W. W. Ballew, Trustee of W. M. Morgan."

The trustee presented a plea in abatement to the jurisdiction of the state court, in which he set up, in substance: "That the suit of the Linstroth Wagon Company was instituted against W. M. Morgan within less than four months prior to the bankrupt proceedings instituted against W. M. Morgan by Jos. W. Moon Buggy Company et al., in the United States District Court for the Northern District of Texas; that at the time of the filing of this suit against W. M. Morgan by plaintiff herein, the said Morgan was in possession of the goods sued for, under valid contract and purchase, and that the title to said goods had passed to Morgan long prior to the filing of the suit herein, and that when Morgan was adjudicated a bankrupt the title to said goods vested in said W. W. Ballew, immediately upon his election as trustee, and that no action in this court can defeat the jurisdiction of the bankruptcy court in the administration of all the assets that were in the possession of Morgan at the time of the filing of the petition in bankruptcy, and for four months prior thereto; that this suit was instituted only a few days before bankrupt proceedings were filed, and that the right of the bankruptcy court over the property is not only superior to that of the state court, but is exclusive, regardless of any action taken in the state court whose jurisdiction in such cases is divested by the bankruptcy proceedings, and this court has no right to further proceed herein." The same matter substantially was presented in exceptions to the plaintiff's petition, and not waiving the plea to the jurisdiction or the exceptions to the petition, the trustee answered with a general denial, and plead specially that the appellant had not relied upon the report made by Morgan to Dun's Mercantile Agency, but was specifically notified that the agency did not accept that report as correct, and had informed the plaintiff that the property statement of Morgan in his report to that agency was greatly exaggerated and that as a matter of fact he was, in all probability, insolvent, and that thus.

with full and timely notice of the insolvency of Morgan, the plaintiff made an absolute sale of the goods to Morgan and accepted his notes therefor without making further inquiry. He plead further that if it should be held that the plaintiff is entitled to recover the goods by reason of the avowed false and fraudulent statements, the goods have in fact been in the possession of Morgan and the trustee for more than six months under claim of title and the goods have been stored in the warehouse of Morgan, and he and the trustee have been compelled to pay rent upon the warehouse and insurance upon the goods, and that plaintiff is liable for the storage of the goods and for the freight paid from St. Louis to Corsicana and Ennis, and for insurance upon the goods; that the freight, storage, and insurance are reasonably worth $1,200, which is a lien upon the property which the trustee is entitled to have foreclosed and the property sold to satisfy the same, concluding with appropriate prayers.

On April 25, 1905, the case in the state court came on for trial. Plaintiff appeared by its attorney, Morgan made default, W. W. Ballew, trustee, appeared in person, and both the parties present announced ready for trial. A jury was waived, and all questions of fact, as well as of law, were submitted to the court, which, having heard the pleadings read, and the evidence adduced, and the argument of counsel, was of the opinion that the property sued for, to wit, 50 complete Linstroth wagons, were obtained from the plaintiff by W. M. Morgan through false representations, and that therefore plaintiff is entitled to recover the same, and entered judgment accordingly. The decree further recites that it appeared to the court that on the 7th of November a writ of sequestration was issued in the cause at the instance of the plaintiff, and went into the hands of the sheriff of Navarro county, by virtue of which he seized and took into his possession certain wagons situated in Navarro county, Tex., described as follows (giving particular description), which wagons were afterwards delivered by the sheriff to L. Carpenter, the receiver appointed by the referee, and that the sheriff took the receiver's receipt for the same, and that the defendant, Ballew, trustee, as such trustee, is in the possession of, and claiming certain of the foregoing described wagons, including those delivered by the sheriff to the receiver as belonging to the bankrupt estate, described and valued as follows (giving a minute description with value), and announcing that it was the finding of the court that plaintiff is entitled to judgment against said Ballew as trustee for the said wagons in his possession as such trustee, gave and caused to be entered the appropriate judgment. Thereafter, on June 28, 1905, the appellant filed its application before the referee, claiming title to the property which had been adjudged to it against W. M. Morgan and against the trustee by the said court, which application the referee set down to be heard on the 12th day of July, 1905, and issued a rule requiring the trustee to show cause on that day why the property should not be delivered by him to the appellant. On the day named the trustee filed his answer to the application, in which he set up substantially the same matters he had urged by his plea, exceptions, and answer in the state court. To this answer of the trustee the appellant replied by exceptions that the matters stated were not responsive to the issue presented by the plaintiff, are evasive and show no cause of defense against the cause of action asserted by Linstroth Wagon Comapny; that so much of the answer as sets up that the sale to W. M. Morgan had passed to him the title to the wagons, presents an issue that had theretofore been adjudicated by the district court of Navarro county, Tex., a court of competent jurisdiction with all parties here interested before it. It also denies the allegation in the trustee's answer that it appeared in open court and refused to claim the property in controversy, but says it had no notice of any order of sale being issued; that it has never been a party to any proceeding in this court, and does not now and never has occupied the position of a creditor of the bankrupt, but shows to the court that, prior to any bankruptcy proceedings against Morgan, its status as against him had been fixed by the suit begun in the district court of Navarro county, Tex., in which the title to the property in controversy was claimed by it, and in which suit the question of whether or not the title to the goods in controversy passed to the bankrupt was adjudicated and decided adversely to the

bankrupt and to the trustee. It denies that any judgment by the District Court of the United States has ever been made, enjoining it from asserting title to the goods in controversy, or enjoining the judgment obtained by it in the district court of Navarro county, Tex.; that by the order of that court, the plaintiff was directed to present its application to this court for the delivery to it of said goods.

In support of the application, and of the trustee's answer thereto, respectively, the record of the proceedings in the state court and in the bankruptcy court were submitted, and on the same day the referee made his order; dismissing the application for the possession of the property, providing in the order that "nothing herein shall be construed as preventing claimant from prosecuting any remedy which he may have against the fund produced by the sale of said property in this proceeding." To which action and judgment of the referee the appellant excepted, and duly filed its petition, asking to have the same reviewed by the judge of the court, stating the grounds of its exception and objection to the order, and of its claim for the relief asked, which need not be recited here. The claim of the appellant on certificate from the referee came on to be heard before the district judge on February 26, 1906, when the trustee stated in open court that the property applied for had been sold since the order of the referee, dismissing the application, and the petition for review thereof on certificate had been filed. Thereupon, the court made the order from which this appeal is taken. The order is as follows:

"It being made to appear to the court that the property in the hands of the trustee of the bankruptcy estate, which the claimant Linstroth Wagon Company claimed, and by its application to the referee sought to recover, has been sold in the due course of the administration of the bankruptcy estate, and that the proceeds of said sale are in the hands of the trustee of said estate, it is ordered that the certificate herein be returned to the referee for the purpose of incorporating these acts therein. It is further ordered that the claimant be, and it is, hereby permitted to present its claim before the referee in bankruptcy for the funds arising from the sale of the said property. It further appearing to the court that the issue raised by claimant in the certificate of the referee has been settled by the sale of the property, it is ordered that the certificate of the referee upon coming in with the additions made thereto, as above provided, stand dismissed, with costs against the Linstroth Wagon Company. To which action of the court the Linstroth Wagon Company excepts in open court, and gives notice of appeal to the United States Circuit Court of Appeals for the Fifth Circuit. Upon the announcement by the court of its decisions on the certificate of the referee, the Linstroth Wagon Company presented in open court, and asked leave to file what it termed "an amended petition of complaint," which paper had to do with its claim for the value of the wagons sold by the referee as such value was fixed in a judgment of the district court of Navarro county, Tex. The court denied leave to file said amended petition of complaint, and directed that whatever papers the Linstroth Wagon Company desired to file in connection with such claim be filed before the referee in bankruptcy for his action thereon. To which refusal and action of the court the Linstroth Wagon Company excepted, and gave notice of appeal to the United States Circuit Court of Appeals for the Fifth Circuit."

H. L. Stone, for appellant.

J. E. Cockrell, Edward Gray, and W. W. Ballew, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The features of this case call to mind the opinion which seems to have been quite prevalent in many quarters at one time while the bankrupt act of 1867 was in force, that the moment a man is declared bankrupt, the District Court, which has so adjudged, draws to itself, by that

act; not only all control of the bankrupt's property and credits, but that no one can litigate with the trustee contested rights in any other court except in so far as the Circuit Courts had concurrent jurisdiction, and that other courts could proceed no further in suits of which they had, at that time, full cognizance; as the result of which opinion the practice became prevalent to bring any person who contested with the trustee any matter growing out of disputed rights of property or contracts, into the bankruptcy court by service of the rule to show cause, and dispose of their rights in a summary way. Against this view of the matter and practice which for a time sweepingly prevailed, the Supreme Court steadily set its face. Eyster v. Gaff et al., 91 U. S. 525, 23 L. Ed. 403. On the going into effect of the present act, some of the referees in bankruptcy and of the judges of those courts, unmindful of the teaching of the Supreme Court under the act of 1867, or disregarding its lesson, began to follow the practice which had prevailed under that act against which the Supreme Court had steadily set its face. With the usual tendency toward the growing weight of precedents, that practice had extended and become widely prevalent before the case of Bardes v. Hawarden Bank (U. S.) 20 Sup. Ct. 1000, 44 L. Ed. 1175, distinctly presented for the decision of the Supreme Court the question as to whether under the act of 1898 a District Court of the United States, in which proceedings in bankruptcy had been commenced and are pending under the act, has jurisdiction to entertain a suit by a trustee in bankruptcy against a person holding and claiming as his own, property alleged to have been conveyed to him by the bankrupt in fraud of creditors. It was considered that the determination of this question depends mainly upon the true construction of section 2 and section 23 of the present act (Act July 1, 1898, c. 541, 30 Stat. 545, 546, 552, 553 [U. S. Comp. St. 1901, pp. 3420, 3431]), which sections are embodied, in hæc verba, in the opinion of the court, and the question of their effect, considering the language of each and their relations to one another, was approached by referring to the terms, and to the judicial construction of the bankrupt act of 1867, and comparing its provisions as to the jurisdiction of proceedings in bankruptcy, and as to the original jurisdiction of actions at law and suits in equity with the provisions of the present act; and after a full review and discussion of previous decisions and provisions of the act under which they were made, and of the analogous provisions of the present act, it was held that the provisions of section 23b control and limit the jurisdiction of all courts over suits brought by trustees to recover property from third parties, or to set aside transfers of property to third parties alleged to have been fraudulently made as against creditors, and that the District Court of the United States can, by the proposed defendant's consent, but not otherwise, entertain jurisdiction over such suits.

On the same day, and through the same justice as its organ, the Supreme Court announced its decision in White v. Schloerb (U. S.) 20 Sup. Ct. 1007, 44 L. Ed. 1183. That case, therefore, can hardly be considered or read so as to qualify the opinion in Bardes v. Bank. In entire consistency with all the reasoning in the opinion in the Bardes Case, the White Case held that, after an adjudication in bankruptcy,

an action of replevin in a state court cannot be commenced and maintained against the trustee for property in the possession of and claimed by the bankrupt at the time of the adjudication, and in the possession of the trustee in bankruptcy at the time the action of replevin is begun, and that the District Court sitting in bankruptcy has jurisdiction by summary proceedings to compel the return of property so seized. This decision rests on principles that are elementary.

A year later the Supreme Court, speaking through the same distinguished justice, who announced the decisions in the cases just cited, announced its decision in Bryan v. Bernheimer, 181 U. S. 197, 21 Sup. Ct. 557, 45 L. Ed. 814, reciting that the property involved in that controversy was not held by Davidson (private assignee of the bankrupt) under any claim of right in himself, but under a general assignment, which was itself an act of bankruptcy; that no trustee had been appointed; that the sale by Davidson to Bernheimer was made after and with knowledge of the petition in bankruptcy; that Bernheimer consented to the form of proceeding, and that therefore the District Court, as a court of bankruptcy, was authorized to decide the matter in a summary way; which, in effect, means that Bernheimer was not an adverse claimant, and that he had expressly submitted his claim to the court in that proceeding.

In the case of Mueller v. Nugent, the claimant held the money in controversy as the agent of his father, the bankrupt, and without any claim of adverse interest in himself; and though he had not, like Bernheimer, submitted himself to the jurisdiction of the bankruptcy court, he was held to be amenable to the control of that court by summary proceedings. 184 U. S. pp. 17, 18, 22 Sup. Ct. 269, 46 L. Ed. 405. In the course of the opinion in this case, the remark was made that the filing of the petition is a caveat to all the world and in effect an attachment and injunction. In reference to which remark, the Supreme Court afterwards said that it was made in regard to the particular facts in the case in which it was used. York Manufacturing Co. v. Cassell, 201 U. S. 353, 26 Sup. Ct. 481, 50 L. Ed. 782. It was also said in the Bernheimer Case that the remark made in the Bardes Case, that the powers conferred on courts of bankruptcy by clause 3 of section 2, and by section 69 (30 Stat. 545, 565 [U. S. Comp. St. 1901, pp. 3421, 3450]), after the filing of the petition in bankruptcy, can hardly be considered as authorizing the forcible seizure of such property in the possession of an adverse claimant, was an inadvertence, and upon a question not arising in the case then before the court which related exclusively to the jurisdiction of the suit by the trustee after his appointment. The Supreme Court has never held itself bound by any part of an opinion in any case which was not needful to the ascertainment of the right or title in question between the parties.

Mr. Chief Justice Marshall said, in Cohens v. Virginia, 6 Wheat. 399, 5 L. Ed. 257:

"It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented. The reason of this maxim is obvious. The question actually before the court

is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

And, in Carroll v. Lessee of Carroll et al., 16 How. 287, 14 L. Ed. 936, Mr. Justice Curtis referred to Ex parte Christy, 3 How. 292, 11 L. Ed. 603, and Peck v. Jenness et al., 7 How. 612, 12 L. Ed. 841, as illustrations of the rule that:

"Any opinion given here or elsewhere cannot be relied on as a binding authority, unless the case called for its expression. Its weight of reason must depend on what it contains."

The trustee takes the property of the bankrupt in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property, which is void as against the trustee by some positive provision of the statute. Thompson v. Fairbanks, 196 U. S. 526, 25 Sup. Ct. 306, 49 L. Ed. 577. The District Court has power to ascertain in a particular case presented whether the claim asserted is an adverse claim, within the meaning of the provisions of the bankruptcy law, existing at the time the petition was filed, and in accordance to the conclusion reached, that court will retain jurisdiction or decline to adjudicate the merits. In many cases the jurisdiction may depend upon the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiry, although the result may be that it will find it cannot go further. And in a case where the court erroneously retains jurisdiction to ascertain the merits, its action can be corrected on review. Louisville Trust Co. v. Comingor, 184 U. S. 26, 22 Sup. Ct. 293, 46 L. Ed. 413; Mueller v. Nugent, 184 U. S. 15, 22 Sup. Ct. 269, 46 L. Ed. 405.

The numerous reported cases decided by the Supreme Court, beginning with Bardes v. Bank, and including Manufacturing Co. v. Cassell, supra, illustrate the application to particular cases of the sound construction placed upon the provisions of section 23, in Bardes v. Bank, and aid in the inquiry as to whether a given claimant is, in truth, an adverse claimant within the meaning of the provisions of that section, but did not, and do not, qualify the construction put upon those provisions in that case. The amendatory act of 1903 gave concurrent jurisdiction to the courts of bankruptcy and any state court which would have had jurisdiction if bankruptcy had not intervened, of suits by a trustee for the purpose of such recoveries as are authorized by section 60, subd. b, and section 67, subd. e (30 Stat. 562, 564 [U. S. Comp. St. 1901, pp. 3445, 3449]), in addition to those which could be entertained by the consent of the proposed defendant. These amendments do not touch the case of the appellant. It does not claim the property here in controversy under any transfer from the bankrupt; it expressly disclaims being a creditor of the bankrupt at the time of the institution of this suit. The suit is not founded upon a claim from which a discharge in bankruptcy would be a release, and therefore is not:

subject to the provisions of section 11a (30 Stat. 549 [U. S. Comp. St. 1901, p. 3426]). Before the filing of the involuntary petition, which imparted life to the jurisdiction of the court of bankruptcy as to Morgan and his estate, the appellant asserted its title to the specific personal property, clearly marked, branded, and distinctly pointed out, which it sought to recover against the bankrupt, then in possession of it, and obtained appropriate preliminary process for placing the property in safe custody pending the trial of appellant's title thereto. It did not seek to acquire or fix a lien by the levy of its writs of sequestration, or by the recovery of a judgment, but to establish its rights to the specific property and recover, lawfully, the possession of it. The appellant could not have sued in the Circuit Court, because the value of the property was less than $2,000; it could not sue in the United States District Court, because that court had no jurisdiction in civil cases, apart from its jurisdiction as a court of bankruptcy, and its jurisdiction as a court of bankruptcy had then not yet been vitalized by the filing of the involuntary petition. Therefore, it could invoke the jurisdiction of the proper state court only, which it did, and by its petition and the suing out of the writs for which it prayed, that court obtained jurisdiction of the cause, and the jurisdiction was not lost, or in any way affected by the subsequent filing of the involuntary petition against Morgan, or by the subsequent adjudication that he was a bankrupt. The trustee might have obtained leave of the court of bankruptcy to appear and defend the suit, and have so appeared by leave of the state court; but he was not a necessary party, and whether he did so appear or not the suit could proceed to final judgment which would be binding on the trustee equally with any other party acquiring an interest pendente lite. Therefore, so far as the property itself or the admitted proceeds of that property are concerned, it is immaterial whether we consider that the trustee became or not, legally, a party to the litigation in the state court. It is conceded that he did personally appear and plead, and that the issue as to the title was not only directly involved as against the bankrupt who made default, but was ably contested by the trustee by demurrer, plea, and answer. The physical facts appear to have been undisputed. The conclusions of law and fact deducible therefrom were directly and fully considered, and the appellant's ownership of the property adjudged.

It follows that the District Court erred in retaining possession of the appellant's property and proceeding to dispose of the same; and that it also erred in dismissing the appellant's application to review and correct the erroneous proceedings had before and by the referee, which were duly brought to the attention of the court by the proper certificate; that, in the condition things were at the time the certificate came on to be heard before the District Court, it should have ordered that the proceeds of the sale of the property in the custody of the court should be surrendered to the appellant, and without any costs against it or any deduction from the amount of the proceeds to meet the expenses and charges which were claimed by the trustee, or by any of the officers of the court of bankruptcy or the parties to the proceedings in that court as a lien against that fund. In support of

this conclusion, and without further present argument, we refer to the opinion of this court in Beach et al. v. Macon Grocery Co. et al., 125 Fed. 513, 60 C. C. A. 557.

The action of the District Court sought to be reviewed on this appeal is wholly reversed, and the cause is remanded to that court, with directions to take order therein in accordance with the conclusions above expressed.