## In re BRAUN.

### BROWN SHOE CO. et al. v. McKEY.

(Circuit Court of Appeals, Seventh Circuit. December 10, 1924.)

No. 3422.

1. **Bankruptcy ⊚288(1)—District Court without power in summary proceeding to determine rights of others in property in their possession before petition in bankruptcy.**

District Court cannot, in summary proceeding in bankruptcy, dispose of question of right to property in possession of others before filing of the bankruptcy petition, under action in replevin against bankrupt.

2. **Bankruptcy ⊚391(3)—Replevin and trover, on ground of fraud in purchase, not stayed by bankruptcy proceeding.**

Action in replevin, with count in trover against bankrupt, on charge that he had purchased and obtained possession of goods by fraudulent representations, pending at the time of filing of the petition in bankruptcy, not being founded on a dischargeable claim, in view of Bankruptcy Act, § 14 (Comp. St. § 9598), is not within section 11a (section 9595), providing for stay of certain suits pending at time of filing the petition.

3. **Bankruptcy ⊚198—Rights under replevin, based on fraud in purchase, not discharged, though within four months prior to bankruptcy proceedings.**

Rights obtained under writ of replevin against bankrupt, under which possession was obtained within four months prior to filing of bankruptcy proceedings, on charge that he had purchased and obtained possession of the goods by fraudulent representations, are not lost or dissolved by Bankruptcy Act, § 67f (Comp. St. § 9651); the words "other liens" relating to liens of the same kind and character as those obtained by "levies, judgments and attachments," and the taking by replevin of property as that of plaintiff, neither being a levy nor giving a lien.

Petition to Review and Revise an Order of the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of David Braun, bankrupt. The Brown Shoe Company and another petition to review and revise an order made on petition of Frank M. McKey, receiver in bankruptcy. Order reversed, with directions to dismiss petition.

Wm. Friedman, of Chicago, Ill., for petitioners.

Robert M. Adams, of Chicago, Ill., for respondent.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Petitioners, before bankruptcy, replevined merchandise from bankrupt, in the state court, on the ground that the purchase and possession had been obtained by means of fraudulent representations. Respondent, receiver in bankruptcy, filed petition in the bankruptcy court, asking that petitioners be restrained from any sale or disposition of the merchandise, that they be directed to turn the same over to the receiver, and that petitioners be compelled to litigate their rights in the bankruptcy court. On the same day that petition was filed the court, apparently without notice to petitioners, granted the whole prayer of the petition. Six days later petitioners made answer, in which they asserted that the court had no jurisdiction in the premises or of the subject-matter, set out the basis of their action of replevin, and moved to set aside the earlier order of the court. On the following day the motion was denied. There was never any hearing upon the merits of petitioners' contention in the replevin suit.

[1] It is admitted that the proceeding in the District Court is purely summary, and that petitioners did not submit themselves to the jurisdiction of the court, but contested it. It is also admitted that the property, before filing the bankruptcy petition, was in the possession of petitioners. The court was wholly without power to dispose of such a question in a summary proceeding. Weidhorn v. Levy, 253 U. S. 268, 40 S. Ct. 534, 64 L. Ed. 898.

It is urged that that which was gained in the action of replevin falls within the provision of section 67f of the Bankruptcy Act (Comp. St. § 9651), viz.: "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt," etc. Three cases are relied upon by respondent, viz.:

In re Weinger (D. C.) 126 F. 875. In that case, while the court discussed the question as to whether the rights obtained in replevin were within the meaning of the language of the section, the court concluded: "It is unnecessary to pass upon this question on this motion."

In re Hymes Buggy & Implement Co. (D. C.) 130 F. 977. Several irregularities were noted, and the case was finally decided by the court upon the finding "that whatever possession of the goods the sheriff acquired under the writ of replevin was on the 4th day of May, 1904, voluntarily surrendered by him to the receiver in bankruptcy."

In re Rudnick (D. C.) 158 F. 223. This case was reversed by the Court of Appeals (160 F. 903, 905, 88 C. C. A. 85, 87), wherein the court said: "It is contended that section 67f of the act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), invalidating levies, judgments, attachments and liens obtained within four months against a person who is insolvent and providing that the property so affected shall pass to the trustee as part of the estate of the bankrupt, vests the necessary power in the District Court. We cannot accede to this view. It is manifest that the section in question deals with the property of the bankrupt. Assuming that Congress might lawfully pass a law requiring the property of third parties, found in the possession of the bankrupt, to be turned over to his trustee as part of his estate, it is sufficient for the purposes of this review that Congress has not done so in the present act. If A. leaves his coat with B. to be repaired and B. refuses to return it, A. can reclaim it in an action of replevin, and the status of that suit is not affected by the fact that B. subsequently becomes a bankrupt. The mere assertion by B. of ownership in the coat does not oust the court of jurisdiction and transfer the controversy to the bankruptcy court. It presents a question of fact merely, to be tried in the court first obtaining possession of the property."

In Linstroth Wagon Co. v. Ballew, 149 F. 960, 79 C. C. A. 470, 8 L. R. A. (N. S.) 1204, before bankruptcy, appellant, on the charge that the purchases of the bankrupt were fraudulent, had proceeded in the state court and obtained sequestration and possession of certain of the property sold, and the sale of which appellant rescinded because of the fraud. Upon the appointment of a receiver in bankruptcy, a few days afterward, he took possession of the assets, including the property under levy and sequestration in the hands of the sheriff. It is unnecessary to recite all of the facts, but such proceedings were had that the possession of the property was awarded to the trustee in bankruptcy. The court said (966, 967, 79 C. C. A. 476, 477): "It [appellant] does not claim the property here in controversy under any transfer from the bankrupt; it expressly disclaims being a creditor of the bankrupt at the time of the institution of this suit. The suit is not founded upon a claim from which a discharge in bankruptcy would be a release, and therefore is not subject to the provisions of section 11a (30 Stat. 549 [U. S. Comp. St. 1901, p. 3426]). Before the filing of the involuntary petition, which imparted life to the jurisdiction of the court of bankruptcy as to Morgan and his estate, the appellant asserted its title to the specific personal property, clearly marked, branded, and distinctly pointed out, which it sought to recover against the bankrupt, then in possession of it, and obtained appropriate preliminary process for placing the property in safe custody pending the trial of appellant's title thereto. It did not seek to acquire or fix a lien by the levy of its writs of sequestration, or by the recovery of a judgment, but to establish its rights to the specific property and recover, lawfully, the possession of it." The court found further that the District Court was in error in returning possession of the property, and directed that it be surrendered to appellant.

[2] The record here shows that the action in replevin included what at common law would be a count in trover. Of course if there was a recovery of the property, there would be no claim whatever. A recovery under the trover count would be for the value of the property obtained on credit upon a materially false statement in writing made by the bankrupt for the purpose of obtaining such credit, and under section 14 of the Bankruptcy Act (Comp. St. § 9598) the only claim, being in trover, was not dischargeable. Linstroth Wagon Co. v. Ballew, 149 F. 960, 966, 79 C. C. A. 470, 8 L. R. A. (N. S.) 1204; Bankruptcy Act, § 14b (3). Section 11a of the Bankruptcy Act (section 9595) provides for the stay of only such suits as are "founded upon a claim from which a discharge would be a release," pending at the time of the filing of the petition. Because neither the replevin feature nor the count in trover were "founded upon a claim from which a discharge would be a release," petitioner's rights are not affected by section 11a.

[3] We are of opinion, also, that, in addition to the authorities above cited, it must be concluded that the rights obtained under the writ of replevin were not lost or dissolved by virtue of anything found in the

language of section 67f, though obtained within four months prior to the filing of the bankruptcy proceeding. In the language "that all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent," the words "other liens," under the familiar rule of ejusdem generis, must be held to relate to liens of the same kind and character as those obtained by levies, judgments and attachments. The words "levies, judgments and attachments," are in very common use and each has a well-known and definite meaning. An attachment proceeding is one whereby the property of a defendant is seized upon a writ of attachment in a suit for the recovery of money, the writ ordinarily being issued upon proper affidavits at or after the commencement of the suit and before rendition of judgment, the property taken to be held to satisfy such judgment as may be obtained. Under such writ there ordinarily is no lien until the property of the defendant is actually taken under the writ.

The term "judgments" must relate to the usual and ordinary judgments of courts of record, by means of which, through statutory provisions, they become liens upon real estate, usually from the time of their entry, but ordinarily they do not become liens upon personal property at all. In order that a lien may be obtained upon personal property, it is usually true that an execution must be issued and placed in the hands of the proper officer. Sometimes the lien attaches upon the placing of the execution in the hands of the officer; under other circumstances, it does not become a lien until an actual levy is made upon the *property of the defendant* in the judgment by the taking of the property into the possession of the officer. It is that act that is usually and ordinarily known as a levy, and if we assume, which we must, that the language of the act was used in its usual and ordinary sense, then the word "levies," as used, cannot be given any other meaning. Bouvier defines "to levy an execution" "to raise or levy so much money on execution," and, again, "a seizure; the raising of the money for which an execution has been issued." We are unable to find any case pertaining to a levy in a judicial proceeding which does not deal with an action under some sort of a writ against the property of the defendant in the action either for the purpose of holding the property for future sale to satisfy a future judgment, as in attachment, or to take the property for the purpose of sale to satisfy an existing judgment.

Bouvier defines "replevin" as a form of action which lies to gain possession of personal chattels which have been taken from the plaintiff unlawfully. That definition is perhaps not quite broad enough, because it will also lie for goods which at the time of the action are in the wrongful possession of the defendant. From time immemorial the practice in replevin has been for the officer to take possession of the property described in his writ and deliver it to the plaintiff. Bouvier defines "replevy"—"to redeliver goods which have been distrained to the original possessor of them." The action of replevin has nothing to do with the taking of a defendant's property for the purpose of satisfying any claim of the plaintiff. On the contrary, it is based upon the wholly antagonistic theory that the property, or at least the right of possession thereof, belongs to the plaintiff and not to the defendant. Other language in section 67f strongly indicates that the taking of property in replevin was not considered a levy within the purview of the act. The language is that "all levies * * * shall be deemed null and void * * * and the property affected by the levy * * * shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt." Exceptions follow, but they cannot possibly relate to actions in replevin.

If one who rescinds a sale for fraud, and obtains a return of his property in an action of replevin before the commencement of bankruptcy proceedings, is to have the property discharged and released, so that it shall pass to the trustee as part of the estate of the bankrupt, then the section takes away from all such plaintiffs a substantial and valuable remedy for which no substitute is given by the act. It cannot be presumed that Congress intended that the word "levies" should be given any such unusual meaning. When appellant took the property under replevin he took it as his own property, and one does not have liens upon his own property. A lien is some right that A. has in the property of B. for the purpose of securing or satisfying some demand.

The order is reversed, with directions to dismiss the petition.