**Matter of B. Sam ENGRAM, Bankrupt.**
Nos. 2313, 2316.

United States District Court
M. D. Georgia,
Columbus Division.
Jan. 19, 1957

343

T. T. Molnar, Cuthbert, Ga., for Walter E. Taylor, trustee.

344

Joe M. Ray, Cuthbert, Ga., Stone & Stone, Blakely, Ga., for Mabel Dell Engram.

BOOTLE, District Judge.

The petition for review, filed by Mrs. Mabel Dell Engram, the mother of the bankrupt, presents the question whether the Referee erred in permanently enjoining her from proceeding with her application in the Court of Ordinary of Clay County, Georgia, for a statutory twelve months support out of the estate of her deceased husband, bankrupt's father.

The record shows that bankrupt's father, Samuel Franklin Engram, died intestate on November 9, 1952, leaving surviving him his widow, Mrs. Mabel Dell Engram, and two sons, one of whom is the bankrupt. On May 18, 1953, the widow was appointed temporary administratrix. On March 7, 1955, she made application for appointment as permanent administratrix. On March 5, 1955, she made application to the Court of Ordinary for a statutory twelve months support under the provisions of Section 113–1002 of the Code of Georgia Annotated.

On March 30, 1955, an involuntary petition in bankruptcy was filed against B. Sam Engram by three of his creditors and on the following day, March 31, 1955, the same creditors filed in this court their petition for equitable relief alleging that B. Sam Engram had been adjudicated a bankrupt and praying that bankrupt's mother, Mrs. Mabel Dell Engram, be enjoined from proceeding further with her application for a twelve months support. After the appointment of the Trustee in bankruptcy, he was made a party plaintiff in said petition for equitable relief and adopted the petition of the creditors. In the meantime, and, on March 8, 1955, the appraisers, appointed by the Court of Ordinary for the purpose, filed their report with said Court setting aside certain real estate and household furniture as being necessary for the support and maintenance of said widow and valued at $4,500. In accordance with the regular procedure, the Court of Ordinary cited all persons concerned to show cause before the Court of Ordinary on the first Monday in April, 1955, why said application should not be granted.

Upon the filing of this ancillary petition for injunction, and on March 31, 1955, this Court referred the same to the Referee "to take such further proceedings therein as are required and permitted by the Act of Congress relating to bankruptcy." The widow filed her motion to dismiss said ancillary petition contending that this Court lacks jurisdiction to enjoin her from proceeding with her petition for a year's support out of the estate of her deceased husband because:

"a. In so far as the property inherited by the bankrupt B. Sam Engram from his father is concerned, this Court can only deal with the title of the bankrupt and that title is inferior to a Year's Support for his mother out of his father's estate;

"b. The creditors of an heir cannot contest with the widow of the heir's intestate her right to a Year's Support out of the estate of said intestate;

"c. This Court is without jurisdiction to determine whether or not Mrs. Mabel Dell Engram should be awarded a Year's Support, and whether or not she had already received such a support at the time she filed her petition therefor;

"d. As appears from the allegations of the petition, the Year's Support had already been set aside to Mrs. Mabel Dell Engram at the time of the filing of the petition of Well Dairies Co-operative et al. in this Court, and there is no further act or thing which she can do in connection with granting of the Year's Support, and therefore no act or conduct that can be enjoined."

The Referee never formally acted upon this motion to dismiss, but treated his findings of fact, conclusions of law and

judgment, hereinafter mentioned, as having the effect of overruling said motion to dismiss. After a number of hearings, the Referee, on June 15, 1956, made his findings of fact, finding the facts as hereinabove stated and additionally that bankrupt's father left an estate of over 200 acres of land with a house and certain moneys and bonds; that the widow moved from said home after the death of her husband, but collected whatever rents there were for the years 1952 through 1955; that she made no application for a year's support prior to March 5, 1955; that her application for appointment as temporary administratrix was for the purpose of collecting the proceeds of insurance, etc., and that she lived out of the moneys so collected; that she has made no accounting to the two sons for the personal property of the estate; that bankrupt was insolvent at the time when a petition for a receiver had been filed against him in the Superior Court of Randolph County on September 11, 1955; that the widow never figured on claiming a year's support until after the filing of said petition for a receiver and that it was only at the insistence of the attorneys who represent both her and the bankrupt that she made a claim; that said application for twelve months support was made solely to hinder, delay and defraud the creditors of bankrupt who had a one-third interest in said estate of his father; that the widow, by her failure to claim a year's support earlier, is estopped from claiming it now to defeat bankrupt's creditors; that the appraisers set aside the entire estate of bankrupt's father with the exception of a small tract on the edge of the house and lot tract and that the part left was of only a few hundred dollars value (the evidence shows that the deceased owned something over 200 acres and that the appraisers set apart 58.08 acres, which, however, contained the improvements); that the moneys collected by the widow were spent by her as temporary administratrix and were unaccounted for and was approximately the same amount as set apart to her and that she had had at least two years support out of the estate. The Referee then concludes as a matter of law that the application for the year's support was made for the deliberate purpose of hindering, delaying and defrauding bankrupt's creditors and, accordingly, he entered a judgment enjoining the widow permanently from proceeding any further with her year's support.

In the opinion of this Court the widow's motion to dismiss the ancillary petition for equitable relief should have been sustained, that the Referee erred in not sustaining it and that it is not necessary for the Court to express any opinion with respect to his findings of fact and other conclusions of law.

Under the rules of inheritance in Georgia the widow and two sons were entitled to inherit equally the decedent's estate. Georgia Code Annotated, § 113–903, subds. 3, 4. Upon decedent's death the title to his real estate vested immediately in his widow and two sons "subject to be administered by the legal representative * * * for the payment of debts, and the purposes of distribution." Georgia Code Annotated, § 113–901. The title to personalty vested in the administrator for the benefit of heirs and creditors. Georgia Code Annotated, § 113–901. The widow, however, was entitled also to a twelve months support which ranks "among the necessary expenses of administration, and to be preferred before all other debts, except as otherwise specially provided * * *". Georgia Code Annotated, § 113–1002. As the widow's attorneys frankly concede in their brief "of course, if Mrs. Engram had received one year's support she would not be entitled to take another under the statute." Moreover, "the laws of Georgia allow a widow one year's support for herself and children out of the estate of her deceased husband; * * * the laws do not contemplate that she shall live at the homestead and consume the provisions belonging to the estate and have a year's support in addition to what she may thus have consumed, allowed to her; * * * in all

applications for a year's support to be assigned her, she must be held chargeable with the value of what she had previously consumed." Wells v. Wilder, 36 Ga. 194. See also Hill v. Hill, 55 Ga.App. 500, 502, 190 S.E. 411, and Smith v. Smith, 73 Ga.App. 567, 572, 37 S.E.2d 439. Also "Long lapse of time between the death of the husband and the widow's application for year's support may be considered by the ordinary in connection with other facts tending to show that the widow had received a support from the estate or had waived it expressly or impliedly. And in passing upon the application the ordinary should give weight to evidence as to such facts in determining the amount to be granted, or whether the application should be wholly refused." Federal Land Bank of Columbia v. Henson, 166 Ga. 857(5), 144 S.E. 728, 734.

The fundamental rule of law applicable here is of such long standing that in the case of Peck v. Jenness, reported in 7 How. 612, 48 U.S. 612, 12 L.Ed. 841, it was remarked, "It is a doctrine too long established to require a citation of authorities * * *." The rule of law referred to and the full quotation are:

"It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice. In the case of Kennedy v. The Earl of Cassilis, Lord Eldon at one time granted an injunction to restrain a party from proceeding in a suit pending in the Court of Sessions of Scotland, which, on more mature reflection, he dissolved; because it was admitted, if the Court of Chancery could in that way restrain proceedings in an independent foreign tribunal, the Court of Sessions might equally enjoin the parties from proceeding in chancery, and thus they would be unable to proceed in either court. The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum."

Other illustrative cases are Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 and Bryan v. Speakman, 5 Cir., 53 F.2d 463(4). The latter case holds that where a bill for foreclosure and receivership was sanctioned and filed in state court, that court had custody of mortgaged property notwithstanding it had not yet appointed its receiver when bankruptcy receiver took possession. See also Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871.

It was said in International Bank v. Sherman, 1880, 101 U.S. 403, 406, 25 L.Ed. 866 and in Mueller v. Nugent, 1901, 184 U.S. 1, 14, 22 S.Ct. 269, 46 L.Ed. 405, that the filing of a petition in bankruptcy is a caveat to all the world, and in effect an attachment and injunction. As was held, however, in the case of In re Dayton Coal & Iron Co., D.C., 291 F. 390, 396, "This remark, however, must be taken with reference to the facts then before the court and 'not

as applicable to all intents and purposes.' York Mfg. Co. v. Cassell, 201 U.S. 344, 353, 26 S.Ct. 481, 50 L.Ed. 782; Jones v. Springer, 226 U.S. 148, 155, 33 S.Ct. 64, 57 L.Ed. 161. Thus taken, its effect is: That the filing of the petition so impounds the property of the debtor then in his possession, that, as held in International Bank v. Sherman, those who deal with it between the filing of the petition and the adjudication, do so at their peril, and cannot acquire title thereto by transfer from the debtor; and that, as held in Mueller v. Nugent, the bankruptcy court may summarily compel its surrender by one holding it merely as agent of the debtor. Babbitt v. Dutcher, 216 U.S. 102, 30 S.Ct. 372, 54 L.Ed. 402, 17 Ann.Cas. 969." For a similar narrowing interpretation of the "caveat" language of the Supreme Court, see Linstroth Wagon Co. v. Ballew, 5 Cir., 149 F. 960, 965, 8 L.R.A.,N.S., 1204.

█ █ It is not to be gainsaid that a Court of the United States may in accordance with 28 U.S.C.A. § 2283 grant an injunction to stay proceedings in a State Court where necessary in aid of its jurisdiction or to protect or effectuate its judgment. This is a jurisdiction, however, which, under the authorities, is to be cautiously exercised and, in the words of the statute, only when "necessary in aid of its jurisdiction, or to protect or effectuate its judgment." In the recent case of Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553, the Supreme Court held that in the Central of Georgia reorganization plan the question whether the acceptance of the offer by the Southwestern Railroad Company required a unanimous vote of its stockholders was for the state court to decide and that the United States Court could not restrain a State Court action brought to enjoin the proposed sale. The Court said: "There can be no question, however, that Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate." At page 142 of 336 U.S., at page 441 of 69 S.Ct., at page 561 of 93 L.Ed. Moreover, the Court pointed out in footnote 11 that even if the controversy had involved property within the exclusive jurisdiction of the bankruptcy court, that court could, in its discretion, postpone action pending adjudication of the question in the State Court but withheld judgment as to whether, under such circumstances, the bankruptcy court would have had to withhold judgment. The Callaway case is right much in point factually. The Central of Georgia was being reorganized in bankruptcy court. It was the owner of a leasehold interest on property of the Southwestern Railroad Company. It did not own the reversion. The reorganization plan extended to Southwestern the privilege of selling the reversion to the Central's trustee, if it so desired. The question arose in the State Court as to whether Southwestern could make such sale under its charter absent the unanimous approval of its stockholders. Such question to an extent and in some way affected the Central's estate in bankruptcy, but not sufficiently, under the Supreme Court's holding, to permit the bankruptcy court to enjoin the State Court action. In the instant case, it must be remembered that the decedent's estate is not in bankruptcy. The mother is not in bankruptcy. The other brother is not in bankruptcy. The only bankrupt is B. Sam Engram, and the only property he owns, insofar as the immediate controversy is concerned, is a one-third undivided interest in the decedent's estate and that interest is subject to the expenses of administration, chief among which is a year's support for the widow, assuming that she has not already received the same or in some way lost her right thereto.

When the Callaway case was in the United States Court of Appeals for the Fifth Circuit en route to the Supreme Court, the Court of Appeals convincingly wrote: "We think the bankruptcy court erred in attempting to exercise exclusive jurisdiction over property which the debtor did not own and upon which it had no lien. The debtor was in actual possession of the tangible proper-

ty leased by it, but it held the same as lessee, not as owner in fee." Benton v. Callaway, 5 Cir., 165 F.2d 877, 880.

The respective jurisdictions of State Courts and bankruptcy courts are exhaustively treated in 28 Am.Jur., page 399, Injunctions, Section 216 et seq.; 6 Am.Jur., page 727, Bankruptcy, Section 297 et seq., including Sections 300 and 301, and in 8 C.J.S. Bankruptcy § 261, et seq., p. 924.

A proceeding in a State Court to ascertain all of the debts and administer all of the property of an insolvent person, which is the essence of bankruptcy, or a proceeding which, though having a lesser scope, will be governed by an application of the Bankruptcy Act on the occurrence of bankruptcy, as where transfers and liens otherwise valid are nullified by bankruptcy, is suspended entirely by bankruptcy though prior in time to bankruptcy. But if the proceeding in the State Court is to try title or assert a lien against specific property not affected by bankruptcy, the State Court has priority of jurisdiction as against the bankruptcy court. In re Moore, D.C. N.D.Ga., 42 F.2d 475. See also Scott v. Goodman, D.C.N.D.Ohio, 25 F.2d 175. Similarly, a State Court suit pending at the onset of bankruptcy for recovery by a defrauded vendor of property purchased on credit by the debtor through a fraudulent credit statement can proceed unaffected by bankruptcy. Linstroth Wagon Co. v. Ballew, supra. Analogously, though bankruptcy does not oust State Court of jurisdiction acquired in a receivership proceeding filed within four months of bankruptcy to enforce a lien more than four months old and hence not affected by bankruptcy, the bankruptcy court has summary jurisdiction to order the State Court receiver to turn over to the bankruptcy trustee excess funds left in the State Court receiver's hands after satisfaction of the lien. Atlanta Flooring & Insulation Co. v. Russell, 5 Cir., 145 F.2d 493, petition for rehearing denied 146 F.2d 884; Atlanta Flooring & Insulation Co. v. Ober-

dorfer Insurance Agency, 5 Cir., 136 F.2d 457.

The reasoning in the above cited decisions applies to the instant case in that a widow's right to a twelve months support has priority over the bankrupt's claim as an heir. The bankrupt's inheritance was subject to the widow's claim for a year's support and remains subject thereto both before and after bankruptcy.

This case may be likened also to a case where only one of three partners is adjudicated a bankrupt. Such an assumed case is covered explicitly by Section 5 sub. i of the Bankruptcy Act, 11 U.S.C.A. § 23, sub. i, which says that in such case, "the partnership property shall not be administered in bankruptcy, unless by consent of the general partner or partners not adjudged bankrupt; but such general partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit and account for the interest of the general partner or partners adjudged bankrupt." To the same effect, Collier on Bankruptcy, Volume 1, page 741, says, "The only interest that the trustee of an individual bankrupt partner has in partnership property in the hands of the unadjudicated partner is the right to demand and receive the partner's interest, if any, in the firm assets after an accounting and payment of debts out of property belonging to the partnership." See also Marnet Oil & Gas Co. v. Staley, 5 Cir., 218 F. 45(3).

The Court of Ordinary is a court of general jurisdiction. Stringfellow v. Stringfellow, 112 Ga. 494, 495, 37 S.E. 767. The Court of Ordinary of Clay County, with the right of appeal from it to the Superior Court of said County, is the proper court to administer the estate of the bankrupt's deceased father. As a part of that administration that Court can properly determine all questions raised and to be raised in reference to the widow's claim for a twelve months support. Said court may have other questions of administration to re-

solve, for instance, whether or not the bankrupt has received any advancements within the meaning of Section 113–1013 of the Georgia Code Annotated, or is simply a debtor of the estate, and, in that connection, whether an administrator holding a claim against a bankrupt heir may enforce it only in the court of bankruptcy, and whether an indebtedness of a bankrupt to the estate of his intestate father can, or cannot, be set off against his interest as an heir in real estate. See In re Von Ruden, D.C.D. Minn., 22 F.2d 860. But these are questions which may arise in the State Court and with which this court is not presently involved. The bankruptcy trustee, if he is so minded, may with authorization from this Court intervene in the State Court proceedings, he being a privy of the bankrupt heir. (McGahee v. McGahee, 204 Ga. 91, 96, 48 S.E.2d 675), and, as Judge Foster stated in the case of McLoughlin v. Knop, D.C.E.D.La., 214 F. 260, 263, "I have no doubt the state court will give due consideration to his contentions * * * and will ultimately decide all questions properly according to the law and evidence of the case." In the meantime, the final administration of the bankruptcy estate will have to await the administration of the bankrupt's father's estate with respect to personalty belonging to said decedent's estate and with respect to realty also, unless with respect to the real estate the Referee should decide that the bankrupt's interest therein may and should be sold subject to the right of the administratrix therein for administration purposes, as was held in the case of In re Von Ruden, supra.

The case of Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867, is doubly apposite holding both that where property is in the possession of one court, of competent jurisdiction, such possession cannot be disturbed by process out of another court and that a Federal court has no original jurisdiction in respect to the administration of a deceased person, and it cannot, by entertaining jurisdiction of a suit against the administra-

tor, draw to itself the full possession of the estate, or the power of determining all claims against or to it.

■ Moreover, allegations of fraud, mismanagement or collusion on the part of the administratrix in the State Court matter does not affect the question of interference with the State Court's jurisdiction. Muffler v. Petticrew Real Estate Co., 6 Cir., 132 F.2d 479(7).

Perhaps the case nearest in point is In re Naslund, D.C.W.D.Wash.N.D., 6 F.Supp. 109, holding that where a husband, who was the principal beneficiary of the estate of his deceased wife, was adjudged a bankrupt pending the administration of his wife's estate in the State probate court, the latter court was not ousted of the possession of the wife's estate by the bankruptcy of the husband, but retained jurisdiction to make disposition of the assets of the wife's estate according to law. The cases of Hull v. Dicks, 235 U.S. 584, 35 S.Ct. 152, 59 L.Ed. 372, and Seiden v. Southland Chenilles', Inc., 5 Cir., 195 F.2d 899, are of particular interest in that they deal with bankruptcy and with the widow's twelve months support under the Georgia statute. These cases hold nothing contrary to In re Naslund, supra, and are clearly distinguishable in that in each case the bankruptcy court had sole possession of the decedent's estate and were in no manner interfering with the jurisdiction or possession of State Courts. In re Rhodes, D.C.N.D.Ohio, 109 F. 117, holds that a homestead set apart in a State probate court to one who later becomes a bankrupt is binding upon the bankruptcy court. Many of the cases herein cited are discussed in the case of In re Burden, D.C.D.Neb., 83 F.Supp. 416, which holds that under the modernization and revision of the Bankruptcy Act effected September 22, 1938, the Referee has summary jurisdiction to cancel execution liens obtained against an insolvent debtor within four months next prior to the filing of the petition in bankruptcy through judgment and the issue and levy of execution in the state court.

For the reasons herein stated the judgment of the Referee that Mrs. Mabel Dell Engram be restrained and enjoined permanently from proceeding any further with the year's support is hereby reversed and upon return of the matter to him he is directed to enter an order sustaining her motion to dismiss the ancillary petition for injunction insofar as it seeks to enjoin her from proceeding further with the application for twelve months support.