Sylvester J. Hart and John Robert Smith, Appellees, v. Charles G. Evans, Trading as Evans Truck Lines, Inc. et al., Defendants. Mid-States Freight Lines, Inc., Appellant.

Gen. No. 43,691.

Opinion filed February 5, 1947. Released for publication February 21, 1947.

EUGENE L. COHN, of Chicago, for appellant.

DAVID I. LIPMAN and ZEAMORE A. ADER, both of Chicago, for appellees; ZEAMORE A. ADER, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On May 31, 1939 Sylvester J. Hart and John Robert Smith filed a statement of claim in the municipal court of Chicago against Charles G. Evans, doing business as Evans Truck Lines, Inc., and Evans Truck Lines, Inc. On December 24, 1940 plaintiffs filed an amended two count statement of claim. Defendants filed an answer presenting defenses. The record shows that on May 23, 1941 the cause came on for trial without a jury, "the defendants being absent and not represented"; that the court, being fully advised in the

premises, found the individual defendant guilty in manner and form as charged in plaintiffs' statement of claim, and assessed plaintiffs' damages at the sum of $300 "in tort"; found the corporate defendant guilty in manner and form as charged in plaintiffs' statement of claim, and assessed plaintiff's damages at the sum of $1,000 "in tort"; entered judgments in the sum of $300 against the individual defendant and in the sum of $1,000 against the corporate defendant. Executions were issued, each of which was returned in due course by the bailiff with the certification that no property had been found and that no part of the judgment had been satisfied. Plaintiffs, asserting that in the sale of the assets of the Evans Truck Lines, Inc., to Mid-States Freight Lines, Inc., there was a failure to comply with the requirements of the Bulk Sales Act, summoned the latter as garnishee. It answered that it had no funds or property of the judgment debtors. On March 31, 1943, plaintiffs filed a petition to correct the judgment order. On April 19, 1943 the court, on such petition, ordered that the judgment order of May 23, 1941, be "corrected" to read: "By agreement of the parties judgment in favor of plaintiffs be and is hereby entered against the defendant, Charles G. Evans for the sum of $300 and against Evans Truck Lines, Inc., a corporation, in the sum of $1,000.00, on the 2nd Count of the Statement of Claim as amended, including costs of suit." Plaintiffs contested garnishee's answer. On a trial before the court without a jury, the court found the issues for plaintiffs and entered judgment against Mid-States Freight Lines, Inc., the garnishee. The latter appealed.

Plaintiffs' theory of the case is that the garnishee did not comply with the Bulk Sales Act in that it did not demand and receive from the vendor a written statement under oath of the vendor or a duly authorized agent having knowledge of the facts, containing a

full, accurate and complete list of the creditors of the vendor, their addresses and the amount owing to each, as near as may be ascertained. The garnishee contends that its purchase of partial assets from the defendant was not a transaction within the Bulk Sales Act; that if the transaction should be held to be within the Act, the provisions thereof have been complied with; that in any event plaintiffs are not creditors within the provision of the Act; and that the garnishment proceedings should be dismissed for failure to comply with the provisions of the Garnishment Act.

Paragraphs 1 to 6 of count 1 of the amended complaint allege that on and prior to July 13, 1938, the corporate defendant was an interstate carrier of cargoes over the highways and subject to regulation of the Interstate Commerce Commission; that plaintiffs had no knowledge concerning the conduct of such business; that the corporate defendant solicited them to purchase a tractor used for transporting cargoes in trailers furnished by it; that it solicited them to enter into its employment under a written agreement; that to induce them to purchase the tractor and enter into its employment, it represented to them that the tractor was in first class mechanical condition, that it was guaranteed not to break down, that a minimum of 3½ trips per month would be made by plaintiffs in hauling defendant's cargoes at the rate of $200 a trip, or an aggregate yield of $700 per month; that the total expenses of each trip would not exceed $65; that except for plaintiffs' personal needs there would be no other expense; that plaintiffs, relying upon defendant's representations as true, purchased the tractor on July 15, 1938 and paid $600 on account; that they also executed and delivered notes secured by a chattel mortgage for $911.30, the balance of the purchase price, payable in 10 monthly instalments of $91.14 each; that concurrent with the purchase, they entered into an agreement in writing with defendant leasing the tractor to it and

agreeing to enter into its employment for a term of one year commencing July 19, 1938; that the employment continued until November 1, 1938; and that the employment terminated without fault of plaintiffs.

Paragraphs 7 to 13, the concluding paragraphs of the first count, charge that the representations made by defendant were false and fraudulent in that the tractor was in a bad state of repair and not in fit mechanical condition to haul cargoes; that the sleeping cab of the tractor permitted rain to seep through, making it impossible to be utilized; that during the period of employment the tractor continually broke down on the highways between Chicago and New York City; that it required expenditures of $110 for work, labor and materials; that the expenses for each trip were between $75 and $85; that defendant failed to furnish sufficient hauling to guarantee 3½ trips a month, "with resulting loss of income below the amount stipulated by defendant"; that plaintiffs were required to pay other charges not disclosed by defendant, including ferry fees and dock labor charges in New York City, terminal fees in Chicago, and telegraph and toll charges, all of which were paid by plaintiffs or wrongfully charged to their account by defendant; that defendant represented that the tires were in good condition; that upon making use of the tires in hauling several cargoes between Chicago and New York City, plaintiffs discovered that they were of cheap grade and not suitable for the purpose intended; that in consequence plaintiffs were obliged to purchase new tires for $150.56; that defendant promised to replace the tires or to pay the reasonable cost thereof, but failed to do so; that defendant failed to furnish sufficient hauling in pursuance of its representations; that by reason of the misrepresentations charged, the income received was insufficient to pay for necessary operating and maintenance costs of the tractor and monthly instalments due on the balance of the purchase price,

and they were obliged to borrow money to make up the deficits, thereby resulting in the complete loss of moneys initially invested and subsequently expended; that defendant should be required to repay the $600 expended as a down payment on the tractor; the sum of $274.23 paid on the notes secured by the chattel mortgage; and they ask judgment against the corporate defendant for $1,000. In this count plaintiffs also charge that the representations were made knowingly and maliciously and with the intent to deceive them, to induce them to purchase the tractor, and to enter into its employment; and they requested a special finding that malice was the gist of the action.

Count 2 realleges the first 6 paragraphs of count 1. It then charges that defendant failed and refused to furnish sufficient hauling pursuant to the agreement and representations; that by reason thereof the income received was insufficient to pay the necessary operating and maintenance costs of the tractor and the fair and reasonable market value of their services; that thereby defendant became liable to them for the fair and reasonable market value of their services during the period from July 13, 1938 to November 1, 1938; that the fair and reasonable market value of such services is $35 a week for each plaintiff for 14 weeks, or the aggregate sum of $980; and that defendant is indebted to plaintiffs in the further sum of $215.55, which had been improperly charged to them and deducted from moneys due to them. This count itemizes such alleged improper charges. The second count further alleges that the tractor was equipped with a fifth wheel; that defendant "appropriated and removed the same from said tractor" without making any allowance therefor to plaintiffs; that the fair and reasonable market value thereof is $85; and plaintiffs ask judgment for $1,280.55.

On July 26, 1939, the corporate defendant and Mid-States Freight Lines, Inc., the garnishee, entered into

a written agreement whereby the defendant promised to sell to the garnishee all of its tangible property and all of its operating rights and licenses issued under the authority of the Interstate Commerce Commission, or the authority of any State board or commission, the purchase price not to exceed $27,000. The parties specified that of the purchase price $5,000 was to be considered the valuation placed on the operating rights and licenses. The balance of the purchase price was to be determined as of the time when the transaction would be consummated. This could not be accomplished until the Interstate Commerce Commission passed on the application. A favorable decision by that commission was rendered on November 7, 1940. On December 11, 1940 bills of sale were made and delivered by the corporate defendant to the garnishee covering the tangible personal property of the corporate defendant. The sum paid for all assets, tangible and intangible, at the time the sale was consummated, was $11,618.16.

In an attempt to comply with the provisions of the Bulk Sales Act, the president of defendant corporation gave a written statement under oath that "upon information and belief" the list attached contained a full list of the creditors of the corporation. The list so attached did not contain the names or addresses of plaintiffs as creditors. It will be observed that at the time of the sale, namely, December 11, 1940, plaintiffs' action against defendants was pending in the municipal court of Chicago. No notice of the sale was given to plaintiffs either by the vendor or the vendee. There was evidence that on December 2, 1939 the attorney for plaintiffs wrote a letter to "Mid-States Motor Freight Company, 3237 W. Lake Street, Chicago, Illinois," stating that he was advised that the addressee was about to take over the assets of Evans Truck Lines, Inc.; that there was pending in the municipal court a suit entitled in the name of his clients against

defendants; and that the letter was written for the purpose of giving notice of the proceeding and the rights of his clients. This attorney testified that he placed proper postage stamps on the envelope, enclosed the letter in the envelope and mailed it; that there was a return address on the envelope; and that it was not returned to him. Mr. Cecil Vernon, vice president and general manager of the garnishee, testified that he was familiar with the business of that corporation; that it did not "maintain an address" in Chicago until December 11, 1940; that then the address was at 2532 South Indiana avenue; that it did not at any time "maintain an address" at 3237 West Lake street; that he denied that the corporation at any time received the notice mailed on December 2, 1939 by the attorney for plaintiffs. It will be noted that the letter mailed by the attorney for plaintiffs on December 2, 1939 was addressed to Mid-States Motor Freight Company and not to the garnishee, Mid-States Freight Lines, Inc. The attorney for plaintiff testified that he obtained the address from the telephone directory.

█ The parties are in agreement that the value of the franchise to operate the business, being an intangible asset, is to be disregarded in determining whether the transaction falls within the provisions of the Bulk Sales Act. Eliminating the $5,000 (allocated as the value of the operating rights), from the $11,618.16 paid for the assets sold, there was a balance of $6,618.16 paid for tangible assets. Garnishee maintains that plaintiffs failed to prove that the transaction represented the sale of 50 per cent or more of the tangible assets of the seller, excluding from consideration the $5,000 paid for operating rights. We find that there was competent evidence to support a finding that the sale on December 11, 1940 wherein the garnishee paid to the corporate defendant the sum of $6,618.16 for tangible assets, constituted a sale in bulk of the major part of the goods and chattels of defendant's

business otherwise than in the ordinary course of trade and in the regular and usual prosecution of its business.

Section 1 of the Bulk Sales Act provides that a transaction covered by the Act shall be fraudulent and void as against the creditors of the vendor, unless the vendee shall in good faith, at least five days before the consummation of the sale, transfer, or assignment, demand and receive from the vendor a written statement under oath of the vendor, or a duly authorized agent of the vendor having knowledge of the facts, containing a full, accurate and complete list of the creditors of the vendor, their addresses and the amounts owing to each as near as may be ascertained, and if there be no creditors, a written statement under oath to that effect. In the case at bar the written statement under oath by the president of the defendant corporation was "upon information and belief." Sec. 2 of the Bulk Sales Act provides that a person who shall knowingly or wilfully make or deliver or cause to be made or delivered any false statement, or any statement in which any material portion is false, or shall knowingly or wilfully fail to include the names of all the creditors of said vendor in the statement, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not more than $1,000, or by imprisonment of not more than one year, or both, in the discretion of the court. An information under this section charging a person with having made a false statement under oath on information and belief would be quashed. It would be difficult, if not impossible, for anyone not the maker of the affidavit, to know what affiant's belief was, or upon what information he based his belief. We are of the opinion that the written statement under oath by the president of defendant corporation is fatally defective as an attempted compliance with the provisions of the Bulk Sales Act.

The garnishee urges that plaintiffs were not creditors within the meaning of the Bulk Sales Act because their claim was unliquidated. Plaintiffs, replying, state that the Act nowhere makes any distinction between types of claims; that it merely uses the generic word "creditors"; and that any doubt as to the meaning of the word "creditors" has been dispelled by several recent cases, citing *Furst v. Brady,* 375 Ill. 425; *Winthrop Restaurant Co. for use of Stock Yards Packing Co. v. Kournetas,* 265 Ill. App. 535; *United States v. Goldblatt Brothers,* 128 F. (2d) 576; *St. Paul-Mercury Indemnity Co. of St. Paul v. Hoey,* 325 Ill. App. 693, and other cases. Plaintiffs also contend that the court properly entered the order of April 19, 1943, correcting the original judgment. The validity of the Bulk Sales Act was sustained by our Supreme Court in *G. S. Johnson Co. v. Beloosky,* 263 Ill. 363. In *Coon v. Doss,* 361 Ill. 515, our Supreme Court said (520) that the Bulk Sales Act of Illinois "is in derogation of the common law and penal in nature, and must therefore be strictly construed." In the *Coon* case the Supreme Court also held that the Act protects only those who are creditors of the vendor at the time of the sale and that its benefits cannot be invoked by assignees of creditors or subsequent creditors. In that case it held that one who took an assignment of the vendor's note subsequent to a sale of the vendor's property cannot attack such sale on the ground that the provisions of the statute were not complied with. Under the statute and the views of the Supreme Court in the *Coon* case, we are called upon to determine whether plaintiffs were creditors of defendant within the meaning of the Act at the time of the sale, December 11, 1940. In *Superior Plating Works v. Art Metal Crafts Co.,* 218 Ill. App. 148, on December 20, 1917 the judgment debtor sold substantially its entire stock of merchandise to the garnishee,

but not in the ordinary course of business; that the garnishee did not require the debtor to comply with the provisions of the Bulk Sales Act; that on April 1, 1918 a judgment was entered in favor of plaintiff and against the defendant for $1,055 for damages for the failure of defendant to deliver certain hot rolled tubing which defendant had agreed to do not later than June 30, 1917; also, for damages for defects in certain quantities of tubing which had, in fact, been delivered. The garnishee was discharged. In affirming the judgment, we said (150):

"It is apparent that if the word creditor is to be taken in the broad sense in which it is sometimes used, as applying to any legal liability that may have been incurred upon a contract, express or implied, or in tort, then appellant was at said time a creditor within its meaning. On the other hand, if the word is to be construed in the limited sense in which it sometimes is used, as applying only to one who holds a demand which is certain and liquidated, then appellant was not a creditor within its meaning. *Steele-Wedeles Co. v. Shoodoc Pond Packing Co.,* 153 Ill. App. 576; *Capes v. Burgess,* 135 Ill. 61. The Bulk Sales Law is in derogation of the common law and therefore should be strictly construed as to its application. We think it clearly should not be applied to parties holding claims in tort, and the same reasoning would lead us to conclude that the holder of a claim, such as this one, which was uncertain, unliquidated and contingent, would not be a creditor within the meaning of the act. To hold otherwise would give to claimants possessing uncertain and speculative demands a power to harass and interfere with the business of persons against whom such claims are made, which we think could not have been within the intention of the legislature. This construction is, as it seems to us, not only reasonable but in harmony with the construction placed upon a similar law by the courts of New York. *Apex Leasing*

*Co. v. Litke,* 173 N. Y. App. Div. 323, 159 N. Y. Supp. 707.''

■ ■  In *Steele-Wedeles Co. v. Shoodoc Pond Packing Co.,* 153 Ill. App. 576, (cited in *Superior Plating Works* case) and *Smead Co. Inc. v. Johnson, Inc.,* 262 Ill. App. 385, we held that a claim for the difference between the contract price of goods sold and the market value is unliquidated and that persons holding such claims are not creditors within the meaning of the Bulk Sales Act. The word ''creditor'' is ordinarily used as the antonym or correlative of ''debtor,'' involving both a debt and a credit, for unless there is a debtor, one whose duty it is to pay and of whom the debt can be demanded, there cannot be a creditor to enforce and compel payments. 21 C. J. S. page 1048. A debt is a liquidated demand as opposed to unliquidated damages. 26 C. J. S. page 5. In the view we take of the case, it is unnecessary to consider whether the court erred in amending the judgment order of May 23, 1941. As pointed out by the Supreme Court in the *Coon* case, the Bulk Sales Act applied to those who were creditors at the time of the sale or transfer. In order to determine whether plaintiffs were creditors within the meaning of the Act, the court should take into consideration all of the facts and circumstances including the pleadings, judgment order and the entire record in the case. The garnishee was not a party to the case at the time of the sale. We have examined the complete opinion in the case of *St. Paul-Mercury Indemnity Co. of St. Paul v. Hoey,* 325 Ill. App. 693, reported in abstract form. We do not believe that the facts are analogous to the facts in the case at bar. We cannot agree that a judgment rendered subsequent to the sale or transfer based on an unliquidated claim, brings the transaction within the provisions of the Bulk Sales Act. If a claim is unliquidated, uncertain and contingent at the time of the sale, the claimant is

not a creditor within the meaning of the Act, and the rule announced in the *Coon* case and the *Superior Plating Works* case should be applied.

Count 1 of the amended statement of claim was based on deceit. Therein plaintiffs requested a special finding that malice was the gist of the action. Count 2 realleges the first six paragraphs of count 1. Paragraph 7 of count 2 asked for $980 as the reasonable market value of plaintiffs' services during the period from July 9, 1938 to November 1, 1938 at $35 per week for each plaintiff. This claim is based on the failure of defendant to comply with the contract by furnishing sufficient hauling to plaintiffs to make 3½ trips a month. Neither count of the amended statement of claim sought a judgment for wages. The second count sought damages for loss of wages which could have been earned by plaintiffs. It is obvious that the claim for the $980 is unliquidated. It would be necessary for plaintiffs to prove how many trips were made, what the expenditures were and what the reasonable value of their services would be at the time. Paragraph 9 of this count asks for $85 because defendant appropriated and removed a fifth wheel from the tractor. This paragraph in effect charges the defendant with the tort known as trover. To recover thereunder it would be necessary for plaintiffs to prove the reasonable market value of the fifth wheel so appropriated. It is also interesting to note that the first count asked damages of $1,000 and the second count asked damages of $1,280.55. Whether the second count, on which the amended judgment was entered, be deemed an action laid in tort or in contract, it is clear that plaintiffs' claims asserted therein were uncertain, unliquidated and contingent. We are satisfied that the correct rule of law is stated in the *Superior Plating Works* case. Applying that rule to the facts of the instant case, we find that plaintiffs' claim at the time of the sale on December 11, 1940, was uncertain,

unliquidated and contingent, and that plaintiffs were not creditors within the meaning of the Bulk Sales Act. We have read the case of *Winthrop Restaurant Co. for use of Stock Yards Packing Co. v. Kournetas,* 265 Ill. App. 535, cited by plaintiffs. There the court assumed that the judgment was entered prior to the sale. The record, however, shows that the judgment was entered after the sale. The court there held that the word "creditors" as used in the Bulk Sales Act, was broad enough to include judgment creditors. The statement of the court in that case that "the affidavit required and to be received by the purchaser should be sufficiently broad to include creditors of every class without limitation" does not change the rule announced in the *Superior Plating Works* case. The question raised in the *Winthrop Restaurant Co.* case, and decided by the Appellate Court, was whether the statement under oath that "There are no outstanding bills against the Winthrop Restaurant Company" was sufficiently broad to embrace all "creditors" contemplated by the statute.

In the case of *Furst v. Brady,* 375 Ill. 425, cited by plaintiffs, the court held that the word "creditors" in the 9th clause of sec. 18 of our Administration Act, includes a person having a claim for personal injuries against the deceased due to his negligence. The statutes involved in the *Furst* case and in the instant case are so dissimilar that we cannot consider the opinion in the former case as controlling in this case. In *United States v. Goldblatt Brothers,* 128 F. (2d) 576, also cited by plaintiffs, the Government, claiming to be a creditor under the Illinois Bulk Sales law, sued defendant as the purchaser of the major part of the assets of the New Dahl corporation to recover an indebtedness for unpaid taxes owing by New Dahl. From a judgment against the purchaser, the latter appealed. One of its contentions was that the Government was not a New Dahl creditor within the meaning

of the Bulk Sales Act because the items of liability were not liquidated and certain. The circuit court of appeals said that the amount of the taxes could have been exactly determined on the date of the sale. In the *Goldblatt* case the court said (580): "It is true a contingent claim for damages for breach of contract or for a tort is not covered by the Bulk Sales Act," citing the *Superior Plating Works* case. It is clear that the circuit court of appeals recognized the rule announced in the *Superior Plating Works* case.

Plaintiffs assert that if "the statute were so construed that the claim of plaintiff were not within the statutory ambit, the statute would once again be unconstitutional as special legislation for failure to include all classes of creditors," citing *Charles J. Off & Co. v. Morehead,* 235 Ill. 40. In answer to this assertion we point out that the Supreme Court in the *Coon* case remarked that the first Bulk Sales Act was held unconstitutional in the *Off & Co.* case, but that the present statute passed in 1913 was sustained in *G. S. Johnson Co. v. Beloosky,* 263 Ill. 363. We do not believe that the constitutionality of the Bulk Sales Act may now be successfully challenged. Plaintiffs also ask us to affirm the judgment for failure of the garnishee to file a proper record or abstract. We have heretofore considered this point and denied the motion to dismiss the appeal. We are of the same opinion now. We find, however, that the costs for the supplemental record and abstract should be taxed against the garnishee, and the clerk is so directed. For the reasons stated the judgment of the municipal court of Chicago is reversed and judgment entered here for the garnishee, Mid-States Freight Lines, Inc., a corporation, and against plaintiffs, Sylvester J. Hart and John Robert Smith.

*Judgment reversed and judgment entered here for garnishee and against plaintiffs.*

LEWE, P. J., and KILEY, J., concur.