**In re BURDEN.**

No. B 22–48.

United States District Court
D. Nebraska, Lincoln Division.

Feb. 17, 1949.

J. Jay Marx, of Lincoln, Neb., for bankrupt.

Herman Ginsburg and Ginsburg & Ginsburg, of Lincoln, Neb., for Charles Sherman, objecting creditor.

DELEHANT, District Judge.

This proceeding is before me on the designated creditor's Petition for Review of an order of the Referee avoiding, releasing and discharging an execution lien

418

of the creditor upon one 1939—1½ ton Chevrolet Truck (theretofore set off to the bankrupt as exempt, infra) obtained, within four months next prior to the filing of the Petition in Bankruptcy, through judgment and the issue and levy of an execution in the Municipal Court of Lincoln, Nebraska, and on the Referee's Certificate thereon in pursuance of Section 39, sub. a of the Bankruptcy Act of June 22, 1938, Title 11 U.S.C.A. § 67, sub. a.

These facts, as found by the Referee, are unchallenged and are clearly correct. I, therefore, adopt them. The bankrupt and the objecting creditor are severally designated by their respective surnames.

At all times mentioned in the ensuing factual recital, up to and including the filing of his Petition in Bankruptcy, Burden was insolvent.

On July 29, 1948 Sherman, as plaintiff, filed in the Municipal Court of Lincoln, Nebraska, a petition against Burden, as defendant, to recover $388.37 with interest and costs. On the same day a summons returnable on August 4, 1948 at 8:30 o'clock a. m. was issued upon the petition and served upon Burden by the delivery of a copy of it at his usual place of residence.[1]

On August 4, 1948 at 11:15 o'clock a. m., in the action thus instituted, judgment by default was made and given in favor of Sherman and against Burden for $398.37 and costs of suit, and an execution on the judgment was issued out of the court of

its rendition directed to its constable and commanding him to levy the execution upon the property of the defendant which he might find.

On August 17, 1948, the constable levied the execution on the truck already described.

On August 18, 1948, Burden filed in the action then pending upon the execution in the Municipal Court, his claim of exemption, in which he claimed the truck as exempt from levy and sale under the laws of Nebraska, (a) generally, in lieu of homestead, under Section 25-1552, R.S.Neb. 1943, to him as one having "neither town lots or houses subject to exemption as a homestead"; and (b) under section 25-1556(8), R.S.Neb.1943, as a "tool or instrument * * * used and kept for the purpose of carrying on his trade or business." Burden made similar claims in open court. Sherman objected to the several claims for exemption. After showing and hearing, the issue thus arising was submitted to the Municipal Court.

On September 3, 1948, the Municipal Court entered in the case the following order: "On defendant's motion for release of 1939 Chevrolet Truck, taken on execution, as a tool in trade, Overruled", and an order that the truck remain in the possession of the constable and that he proceed to sell it for the satisfaction of Sherman's judgment. No further action was ever taken by the constable or the Municipal Court in that action.[2]

[1] In this relation the Referee makes a finding that the constable of the Municipal Court made return to the summons showing such service; but that Burden testified before the Referee that he did not receive or learn of the copy of the summons until after judgment had been entered against him; that he was then working at Wahoo, Nebraska and first learned of the copy of summons from his wife to whom it was brought by a little boy who had found it in the street. I neither adopt nor reject that finding, although I grant that the evidence supports it. However, it is entirely immaterial to the present inquiry. The judgment of the Municipal Court, and the validity of the service of process upon Burden have never been attacked by any appropriate method.

[2] It may properly be understood that this comprehensive negation of "further action" is adequate to find that the constable did not cause the making of the appraisal required by Section 25-1553, R.S.Neb.1943, upon the filing before sale upon execution, by the claimant of the general exemption in lieu of homestead under Section 25-1552, R.S.Neb.1943, of the verified inventory of his personal property. Whether the affidavit submitted to the Municipal Court by Burden complied with Section 25-1553, R.S.Neb. 1943 does not clearly appear. But assuming that it did, no effort seems to have been made to secure or make the statutory appraisal which its filing requires.

On August 17, 1948, no other encumbrance against the truck was of record; but on August 18, 1948, a chattel mortgage upon it, to secure the payment of the sum of $567 to Federated Finance Company, of Lincoln, Nebraska was filed for record. That chattel mortgage had been in existence, unfiled and unrecorded, for some time.

On September 4, 1948, Burden, as plaintiff, instituted, in the District Court of Lancaster County, Nebraska against Sherman, the constable and others, as defendants, an action in replevin for the recovery of the possession of the truck. On the same day, a Writ of Replevin was issued in that action, out of, and under the seal of, that court, directed to the sheriff of Lancaster County, Nebraska, commanding him to take possession of the truck. Pursuant thereto, the sheriff possessed the truck and caused it to be appraised. Its value was fixed in the appraisal at $750. Still on September 4, 1948, Burden, the plaintiff in the action, as principal, and one J. L. Caplan as surety, executed and delivered to the sheriff a replevin bond in due form in the penal sum of $1,500, conditioned that they would pay all damages and costs awarded against them and return the truck in case a judgment for its return was rendered against Burden. Thereupon, the sheriff delivered the truck to Burden, who, at all times subsequent thereto has retained its possession. On October 13, 1948, the defendants in the replevin proceeding filed their answer therein, and, in that answer, among other things, denied that the court in which the proceeding was pending had jurisdiction of it. No further proceedings have been had in that case.

On October 19, 1948 Burden instituted this proceeding, filed his petition for adjudication, and was adjudicated a bankrupt.

On November 2, 1948, the first meeting of creditors was held, and Hyman Polsky was appointed trustee and qualified in that capacity.

On November 10, 1948, the trustee filed his report of exempt property and set the truck and other property off to Burden as his exempt property under the laws of, Nebraska, and the Bankruptcy Act. No exception was taken to the report.

On November 24, 1948, the Referee made and entered an order approving the trustee's report of exemptions, and set the truck off as exempt along with other property. No exception was taken to that order.

Not formally found, but implicit in all findings of the Referee is the ownership of the truck by Burden at all material times. Then, too, the Referee's entire ruling in the proceeding before him implies, and before me Sherman has acknowledged that, at the time of the filing of his Petition in Bankruptcy, Burden was engaged in commercial trucking operations, as his business or occupation, and that the truck was then used and kept by him for the purpose of carrying on that business.[3]

---

[3] The creditor does contend that Burden was not engaged, and the truck was not being kept or used by him, in the trucking business at the time of the levy, but that, in the short interval thereafter and before the filing of his Petition in Bankruptcy, he changed his occupation and entered the trucking business. And the creditor objects and excepts to the Referee's failure to make a specific finding to that effect. I gather that the Referee, deeming the date of the filing of the Petition in Bankruptcy to be alone material in classifying property as exempt in the present proceeding, considered it unnecessary to make a detailed and express finding of Burden's business or occupation and the status therein of the truck as of August 17, 1948. Thus persuaded, he may have been, and undoubtedly was, unwilling, in default of necessity, to reexamine the question upon which the judge of the Municipal Court had theretofore passed. I agree with that quite obvious view, as will be made somewhat clearer elsewhere in the principal memorandum. Without making a formal finding upon the point, I am accepting as factually true for the purpose of my ruling, the rejection of Burden's contention that on August 17, 1948 he was engaged in the trucking business and used and kept the truck in that business. Though not formally declared with the exactness of a finding of fact, such a rejection is implicit in the Municipal Judge's order of September 3, 1948. It ought to be mentioned, however, that the evidence before the Referee and also before me, warrants the

After Burden's recovery of possession of the truck, it was involved in a collision, in consequence of which it was damaged and its market value was diminished. It was repaired; but it appears to be conceded that its present value is somewhat less than its value on the date of levy. Without prescribing exact values at either time, it satisfactorily appears that its value on August 17, 1948 was somewhat more, and on October 19, 1948 was somewhat less, than $500.

The Referee's ruling, to which exception was taken, was upon the issues made by the following pleadings. On October 29, 1948 the bankrupt, who had theretofore made claim to the truck as his exempt property in bankruptcy, filed with the Referee his application for an order releasing it from the execution. On December 2, 1948, the creditor filed objections and answer to the application. Theretofore, on November 24, 1948, the Referee had made and entered an order discharging the truck from the execution and levy, which order he had vacated under date of November 30, 1948, upon the creditor's application, and for insufficient notice and hearing. In the vacating order of November 30, 1948, the creditor was directed to file his answer on or before December 3, 1948. On December 3, 1948, the Referee formally and in writing set the hearing on the issues for December 6, 1948, and by mail gave formal notice thereof to Caplan, the surety on the replevin bond, to Federated Finance Company, the chattel mortgagee and to Polsky, the trustee. The hearing was had as scheduled; and the Referee entered the challenged order on December 8, 1948. Petition for Review was filed by the creditor on December 10, 1948, and the Referee's Certificate of the proceedings was made and filed on December 13, 1948.

Broadly understood, the creditor contends, first, that the referee was without jurisdiction to entertain the controversy or make the order; and secondly, that, even if his jurisdiction be granted, his order was mistaken and erroneous.

The statute directly involved is Section 67, sub. a, of the Bankruptcy Act of 1938, Title 11 U.S.C.A., § 107, sub. a, the first four numbered subparagraphs of which are set out in a footnote.[4] In any appraisal

---

conclusion—and I expressly find—that *for some time prior to, and during a part of,* June 1948, Burden had been operating a garbage route and had done casual general hauling, in both of which activities he employed and used the truck. However, thereafter, and during July and up to and including August 17, 1948 he was chiefly employed by a general contractor upon work which at that time did not require his use therein of the truck. I mention these circumstances, not as controlling factual matters, but as items reflecting some general instability in the occupation or business of Burden and repelling any possible inference that his change in occupation between August 17, 1948 and October 19, 1948 was from a long and well established occupation to one newly resorted to.

4 "a. (1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was in-solvent or (b) if such lien was sought and permitted in fraud of the provisions of this title: Provided, however, That if such person is not finally adjudged a bankrupt in any proceeding under this title and if no arrangement or plan is proposed and confirmed, such lien shall be deemed reinstated with the same effect as if it had not been nullified and voided.

"(2) If any lien deemed null and void under the provisions of paragraph (1) of this subdivision a, has been dissolved by the furnishing of a bond or other obligation, the surety on which has been indemnified directly or indirectly by the transfer of or the creation of a lien upon any of the nonexempt property of a person before the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this title by or against him, such indemnifying transfer or lien shall also be deemed null and void: Provided, however, That if such person is not finally adjudged a bankrupt in any proceeding under this title, and if no arrangement or plan is proposed and confirmed, such transfer or lien shall be deemed reinstated with the same effect as if it had not been nullified and voided.

of the published literature upon the significance of the cited language, it must be understood that it represents a comprehensive legislative modernization and revision, effective September 22, 1938, of Section 67 subs. c and f of the Bankruptcy Act in its form prior to the amendment of 1938, Title 11 U.S.C.A. § 107, subs. c and f, in its language before the cited date. And the amplified language and coverage of the amendatory legislation must be kept in view in the evaluation, for present purposes, of otherwise pertinent judicial decisions upon facts maturing before September 22, 1938.

Arguing in denial of the jurisdiction of the Referee over the instant issue, the creditor assembles substantial authority to the effect that in the application of the former statute (a) not every lien obtained by judicial proceedings upon the property of a debtor within four months prior to the filing by or against him of a petition in bankruptcy, resulting in an adjudication of bankruptcy, was made void or voidable by the statute, but only such lien as was obtained in the circumstances defined in the statute, and principally at a time when the debtor was insolvent; and (b) the statute, despite its mandatory language, did not operate automatically to dissolve the lien thus obtained in the instant, and by force alone, of the adjudication in bankruptcy; but (c) the lien denounced was made, not void, but voidable through the judgment of a court of competent jurisdiction, and upon the completion of proper procedure to obtain its cancellation. Connell v. Walker, 291 U.S. 1, 54 S.Ct. 257, 78 L.Ed. 613; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. Thus far, there is no question of the accuracy or pertinence of his position; and it seems to be equally applicable to the present legislation.[5]

He further, and correctly contends that, under the former section 67, sub. f[6], it was consistently held that (a) once the bankruptcy court had set off to the bankrupt any of his property as exempt, the jurisdiction of the bankruptcy court over it was entirely terminated, Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061; In re Rabb, D.C.Tex. 21 F.2d 254; In re Lippow, 7 Cir., 92 F.2d 619; and (b) a lien upon a debtor's property obtained by judicial proceedings within four months prior to the filing of a petition in bankruptcy was voidable in a proper suit outside the bankruptcy proceeding, at the behest of the trustee, in respect only

---

"(3) The property affected by any lien deemed null and void under the provisions of paragraphs (1) and (2) of this subdivision a shall be discharged from such lien, and such property and any of the indemnifying property transferred to or for the benefit of a surety shall pass to the trustee or debtor, as the case may be, except that the court may on due notice order any such lien to be preserved for the benefit of the estate, and the court may direct such conveyance as may be proper or adequate to evidence the title thereto of the trustee or debtor, as the case may be: Provided, however, That the title of a bona fide purchaser of such property shall be valid, but if such title is acquired otherwise than at a judicial sale held to enforce such lien, it shall be valid only to the extent of the present consideration paid for such property.

"(4) The court shall have summary jurisdiction of any proceeding by the trustee or debtor, as the case may be, to hear and determine the rights of any parties under this subdivision a. Due notice of any hearing in such proceeding shall be given to all parties in interest, including the obligee of a releasing bond or other like obligation. Where an order is entered for the recovery of indemnifying property in kind or for the avoidance of an indemnifying lien, the court, upon application of any party in interest, shall in the same proceeding ascertain the value of such property or lien, and if such value is less than the amount for which such property is indemnity or than the amount of such lien, the transferee or lienholder may elect to retain such property or lien upon payment of its value, as ascertained by the court, to the trustee or debtor, as the case may be, within such reasonable times as the court shall fix."

[5] Reserving for the present the important identification of "a court of competent jurisdiction".

[6] Which, rather than Section 67, sub. c, was more commonly resorted to and is more directly comparable to the present statute.

of property administrable by him, and not as to property which did not pass to him as trustee. Connell v. Walker, supra; Fischer v. Pauline Oil Co., 309 U.S. 294, 60 S.Ct. 535, 539, 84 L.Ed. 764. In the latter case, (decided in 1940, but arising entirely before September 22, 1938) the court explained the remedies of the trustee in the following language: "The courses open to the trustee under the Bankruptcy Act of 1898 were to proceed to have the lien declared void, by plenary suit, or by intervention in the court where it was obtained, or by applying, in the bankruptcy cause, to restrain enforcement, as might be appropriate in the circumstances."

And for each of the three available remedies the supreme court cited judicial precedent.

■ The position is also suggested here that, under the language of the former Section 67 sub. f, wherein it was declared that the property discharged from the voidable lien "shall pass to the trustee as a part of the estate of the bankrupt", the property of the bankrupt ultimately set off as exempt, and, therefore, passing to him was placed beyond the protection of that section of the old act. And there are decisions which support that view. However, Chicago, B. & Q. R. Co. v. Hall, 229 U. S. 511, 33 S.Ct. 885, 57 L.Ed. 1306 announces a precisely contrary conclusion. And the right of the bankrupt, under the former act, to demand the release of a lien upon his exempt property, obtained by judicial proceedings within four months next prior to the filing of the petition in bankruptcy, is emphasized in Fischer v. Pauline Oil Co., supra. There, the court declared: "It is settled, however, that not only may the trustee avoid the lien (Taubel-Scott-Kitzmiller Co. v. Fox et al., supra; Connell v. Walker, supra), but that the bankrupt may assert its invalidity as respects property set apart to him as exempt in the bankruptcy proceeding. Chicago B. & Q. R. Co. v. Hall, 229 U.S. 511, 33 S.Ct. 885, 57 L.Ed. 1306. But the lien is not avoided for the benefit of the bankrupt save as to his exempt property or nullified as respects other lienors or third parties."

It may be argued, and it is quite true, that the quoted language was unnecessary to the decision of Fischer v. Pauline Oil Co., supra, and that Chicago B. & Q. R. Co. v. Hall, supra, may be factually distinguished from the present problem. But the pertinent discussions in them of the right of the bankrupt to obtain the release from the denounced liens, of his exempt property are deliberate and considered judicial expressions, which this court is not at liberty to neglect or ignore. Watson v. St. Louis I. M. & S. Ry. Co., C.C.Ark.; 169 F. 942 affirmed 223 U.S. 745, 32 S.Ct. 533, 56 L.Ed. 639; Brown v. Chicago & N. W. Ry. Co., 102 Wis. 137, 78 N.W. 771; Union Pacific R. Co. v. Mason City & F. D. Ry. Co., 199 U.S. 160, 26 S.Ct. 19, 50 L.Ed. 134; Kessler v. Armstrong Cork Co., 2 Cir., 158 F. 744; New York C. & H. R. R. Co. v. Price, 1 Cir., 159 F. 330. I am satisfied, therefore, that, the determination of the appropriate forum for its assertion aside, even under the former statute the bankrupt had the substantive right to obtain the release of the property set off to him as exempt, from liens within the definition of its section 67, sub. f.

Without the unnecessary citation of impertinent and distinguishable opinions, it may appropriately be emphasized that consideration is being given on this occasion to the narrow field of liens upon a debtor's property *obtained through judicial proceedings* within four months of the filing by or against him of a petition in bankruptcy. Judicial discussions may, therefore, generally be disregarded which are compelled or controlled by other factors. Among these, suggestively but not exclusively, are cases in which (a) a bankrupt has sought to avoid liens created through his own fraudulent conveyance or encumbrance within four months prior to bankruptcy, of that portion of his property later set off to him as exempt; (b) an attempt has been made within the four months' period to enforce a lien obtained more than four months before bankruptcy, whether it was obtained in the first instance through judicial proceedings or otherwise; (c) cancellation was denied because the debtor was not shown to have been insolvent when the lien was obtained, even though it was obtained within the prescribed period of time, and (d) a bank-

rupt has undertaken to secure the release of a lien upon non-exempt property, either that which should pass to his trustee or that which has been abandoned as burdensome.

■ But, regardless of the course of construction (at least in respect of procedure) of the former section 67, sub. f, the Referee in this proceeding concluded that, by the explicit language of the present section 67, sub. a, construed as a whole, and especially in its subparagraph (4), he had summary jurisdiction, in the present instance, upon the bankrupt's petition, to cancel the creditor's lien. And I am convinced that he was correct in his conclusion.

By subparagraph (1) of section 67, sub. a (see footnote 4, supra) the declared invalidity is extended to "every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this title by or against such person * * * if at the time when such lien was obtained such person was insolvent", with a reservation not now material. The sweeping generality of that language alone is not decisive in favor of the Referee's ruling, for it is not essentially broader than the comparable language of the repealed section 67, sub. f. But where section 67, sub. f provided that the property thus relieved of the lien should "pass to the trustee as a part of the estate of the bankrupt", subparagraph (3) of the present section 67, sub. a provides that it "shall pass to the trustee or debtor, as the case may be", without defining it "as a part of the estate of the bankrupt".

■ Then, the present subparagraph (4), entirely new, is to be contrasted with the complete omission from the former section 67, sub. f of any jurisdictional and procedural prescriptions. It declares in part that: "(4) The court shall have summary jurisdiction of any proceeding by the trustee or debtor, as the case may be, to hear and determine the rights of any parties under this subdivision a. Due no-

tice of any hearing in such proceeding shall be given to all parties in interest."

No question is presented on this occasion respecting the adequacy of the notice of the hearing which resulted in the order excepted to. By Title 11 U.S.C.A. § 1(9), "court" is defined to "mean the judge or the referee of the court of bankruptcy in which the proceedings are pending". In the first instance, therefore, it is the Referee qualified to act in this division, and upon certificate of review, it is one of the judges of this court.

■ The quoted language of subparagraph (4), so manifestly remedial in its scope and purpose, ought not to be narrowed by niggardly construction and application in deference to the traditional notions of the bench and bar in administering the earlier statute touching the summary jurisdiction of this court and the requisite parties and procedure for its invocation. It ought rather to be broadly and liberally construed and applied in the pursuit of its purposes, which, along with others, include (vide infra) simplicity, expedition and economy in the vindication of the rights defined and declared in the earlier subparagraphs of section 67, sub. a. And competent authority has so appraised it.

The Supreme Court, in Fischer v. Pauline Oil Co., supra, by way of a footnote to its enumeration of the resources formerly available to the trustee under section 67, sub. f (see quotation, supra) observed that: "The Chandler Act, § 7, sub. a(4), 52 Stat. 876, vests summary jurisdiction in the bankruptcy court to hear and determine, after notice to the parties in interest, all questions affecting the validity of the lien."

It may readily be granted, first, that the footnote was wholly unnecessary to the Pauline Oil Co. decision, and, secondly, that the court was directly considering an action within the initiation of a trustee, rather than a bankrupt. But the broad reach of its language may not prudently be disregarded by a referee in bankruptcy or a district judge.

I do not consider Walker v. Leach, 10 Cir., 158 F.2d 15 cited and relied upon by the bankrupt to be substantially persuasive

in his behalf. It is true that in it the referee and the district judge exercised summary jurisdiction upon a bankrupt's petition to relieve exempt personalty of the lien of attachments levied on it within four months before her bankruptcy and while she was insolvent, and that the judgment was affirmed. But it further appears that the summary jurisdiction of the bankruptcy court was unchallenged by her adversaries; and that it was neither at issue nor formally declared in the Circuit Court of Appeals.

Dealing with a controversy which admittedly did not involve the immediate problem now before me, Judge Yankwich, in Re Rand Mining Co., D.C.Cal., 71 F. Supp. 724, 730, examined the reach of Section 67, sub. a(4) and concluded that: "This subdivision teaches that it was the aim of the Chandler Act to confer summary jurisdiction *in all cases* arising under subdivision a of section 67, regardless of whether some of the instances it covered would have required plenary actions under the old law as interpreted by our courts."

Eminent text writers have also considered that subparagraph (4) clearly grants summary jurisdiction to a court of bankruptcy, upon the petition of a bankrupt and due notice and hearing, to cancel a lien upon his exempt property obtained through judicial proceedings within four months of the filing of his petition in bankruptcy.

Commenting on subparagraph (3) of the present section 67, sub. a, Collier on Bankruptcy, 14th Ed. Vol. 4 p. 20, says, with significance, that: "The reference to the debtor is included since a lien against exempt property may be avoided for his benefit." Citing Chicago B. & Q. R. Co. v. Hall, supra.

Again, considering subparagraphs (3) and (4) of the section, the same authority Vol. 4, pp. 122, 123, 124, states: "Section 67a(3) codifies the rule of Chicago Burlington & Quincy Ry. Co. v. Hall, referred to in the Fisher" (note misspelling) "case, supra, by providing that property affected by any lien or transfer voidable under § 67 a (1) or (2) 'shall pass to the trustee *or the debtor*, as the case may be.' Former § 67f contained a similar provision for the passing of property affected by a voidable lien *to the trustee* as a part of the bankrupt estate, but did not expressly recognize the bankrupt's right to have his exempt property freed of voidable liens * * * Section 67a(4) in conferring on the bankruptcy court 'summary jurisdiction of any proceeding by the trustee or debtor, as the case may be, to hear and determine the rights of any parties under this subdivision a,' seems clearly to authorize the debtor to resort to the judicial machinery of the bankruptcy court to free his exempt property from a lien obtained within the terms of § 67a(1) and the rule of the Hall case, supra. Reference to the debtor here makes it abundantly clear that a lien or transfer may be avoided for the benefit of a debtor in possession under an arrangement or reorganization proceeding where no trustee is appointed. It is not to be assumed, however, that § 67a(4) enables the debtor in straight bankruptcy to avoid a lien on his non-exempt property." (Emphasis as in text.)

Remington on Bankruptcy, 5th Ed. Vol. 4, p. 385, Section 1608, in the course of a summary of changes made by the Chandler Act, says that: "Subdivision (a) (4) is new. It confers summary jurisdiction to determine *the rights of all parties* under the subdivision". (Emphasis added.)

Again referring to subparagraph (4) of Section 67, sub. a, the same authority, Vol. 4, p. 434, Section 1617, asserts that: "The Chandler Act expressly confers summary jurisdiction on the bankruptcy court of any proceeding by the trustee or a debtor to determine rights of parties under subdivision (a) section 67, when derived from liens acquired by legal proceedings. * * "

Later, it demonstrates, by an analysis of several judicial opinions, the authoritative arrival by the courts at the view that, in a competent court, even under the former Section 67 sub. f, a bankrupt had the right to demand the avoidance of liens, obtained within four months before bankruptcy and while he was insolvent, upon property later

set off to him as exempt.[7] That elemental right to relief in respect of exempt property, even before the Chandler Act, being vindicated, it is certain that the 1938 Act did not withdraw or minimize it. And the comprehensive jurisdictional grant of Section 67, sub. a(4) seems clearly to embrace it.

▮ I have already suggested the impropriety of a narrow construction, against the bankrupt, of the jurisdictional subparagraph. It is too obvious to be overlooked. In the report of the Judiciary Committee of the House of Representatives on the measure is the following statement: "Clause (4) represents a decided change from the present law, which requires a preferential lien to be set aside by a plenary proceeding. The change is in the interest of expedition."

Besides expedition, it also achieves the important objectives of economy and simplicity. Can it reasonably be conceived, unless the language compels the conclusion, that the congress, by subparagraph (4) has erected a procedure designed to provide expedition and economy for the benefit of the trustee or the person or entity within the reach of Chapters 10 to 13 inclusive, but has denied it to the bankrupt debtor who most surely stands in need of it and whose modest exemptions are least adequate to justify the delay, uncertainty and expense of a plenary suit? I am quite aware that the essential justice of an offered construction of a legislative enactment may not be allowed to insinuate the desired interpretation into statutory language that is clearly inhospitable to it. But it argues strongly for its position if the construction contended for is clearly admissible, and especially if it is the one most naturally issuing from the language of the legislation itself. And such, I venture to think, is the present situation.

Counsel for the creditor contend that the word, "debtor" in section 67, sub. a, should not be considered to include a bankrupt in an ordinary bankruptcy case. They point out that, by the Chandler Act, special proceedings for the relief of certain debtors, through rehabilitation or debt adjustments or otherwise, were either newly devised or reenacted upon the basis of then recent remedial legislation, and made a part of the Bankruptcy Act, to which, in its original conception, they were both alien and unknown; and they remind the court that the term "debtor" is employed very generally in connection with such measures, in which actual Bankruptcy does not ordinarily occur, and is designedly avoided, if possible. Then, too, they suggest that "debtor" is not listed or defined among the general definitions of Title 11 U.S.C.A. § 1, but that it is defined and sharply restricted in its significance in direct relation to specific procedures and remedies within the 1938 Act.

▮ I am unable to perceive, in the failure of section 1 formally to define "debtor", any jurisdiction thwarting exclusion of a bankrupt from its meaning in its present context. Definition, by its own derivative interpretation, is exclusionary. It is the erection of boundaries, the prescription of limits, within which the term, statutorily defined, is thereby circumscribed in its intendment, unless the definition be made expressly supplementary to its ordinary usage. Without definition, it has the full reach accorded to it by its customary employment. So, here, a debtor is "one who owes a debt", a person "correlative to (a) creditor". Webster's New International Dictionary. Hebert v. Handy, 29 R.I. 543, 72 A. 1102; Rooney v. Inheritance Tax Commission, 143 Kan. 143, 53 P.2d 500; City of Boston v. Turner, 201 Mass. 190, 87 N.E. 634; Hart v. Evans, 330 Ill.App. 385, 71 N.E.2d 546. Specifically it includes a bankrupt. Walser v. International Union Bank, 2 Cir., 21 F.2d 294; United States v. Pusey, 27 Fed.Cas. 631, No. 16,098. Moreover, the term is employed in various places in the present Bankruptcy Act, in circumstances which point unmistakably to its applicability to a bankrupt in traditional bankruptcy. Without ostentatious citation, some examples may be noted. Among the definitions in Title 11 U.S.C.A. § 1, "Petition" is defined

---

[7] See Remington on Bankruptcy, 5th Edition, Vol. 4, p. 443 et seq., Section 1621, and the many cases there cited and considered.

by subparagraph (24) as "a document filed in a court of bankruptcy or with a clerk thereof by a debtor praying for the benefits of this title, or by creditors alleging the commission of an act of bankruptcy by a debtor therein named". In Title 11 U.S.C.A. § 96, dealing with preferred creditors, the term "debtor" is employed as descriptive both of a general bankrupt and of the subject of a petition under Chapter 10, 11, 12 or 13. It has a like reach when used in Title 11 U.S.C.A. § 107, subs. b and d and in Section 110, sub. e(1) and (2)

After the entry of an order of adjudication in respect of him, a debtor is, generally and more exactly, identified as a bankrupt; but he does not thereby cease to be a debtor. He retains that relation after adjudication, in relation to his dischargeable debts until his discharge, and, even thereafter, in relation. to his debts, if any, which are unaffected by a discharge.

I am aware of a sentence in the report of the Judiciary Committee of the House of Representatives (already cited herein) to which, by its narrow application, resort might be had in support of the limitation of word debtor to the subject of an arrangement or reorganization proceeding. Speaking of the provision of Section 67, sub. a(3) for the passage of property released from lien under the previous two subsections (see citation and quotation, supra) and any indemnifying property, "to the trustee or debtor, as the case may be", the report said: "Since such transfer or lien may be avoided also for the benefit of a debtor in a case of an arrangement or reorganization proceeding, a reference to the debtor is included."

Such inclusion was, indeed, appropriate for the purpose suggested in the quoted sentence; but it does not follow that it may be thus limited and may be allowed no broader or further significance.

Possibly pertinent, and as, I consider, advanced in reference, both to the summary jurisdiction, in the premises, of this court and to the manner of its exercise in the circumstances of this case by the referee, are certain recognized legal rules on which the creditor relies because of the posture of the litigation pending in the Municipal Court and the District Court of Lancaster County, Nebraska, when the petition in bankruptcy was filed. I consider that they are quite inapplicable to the present issues, and, in no wise, controlling. The reasonable limitation upon the length of this opinion forbids their adequate analysis and discussion. But brief observations upon some of them and the authorities cited in their support are allowable.

■ It is undoubtedly a general rule that a state court which first validly acquires jurisdiction over, and the possession, either actual or constructive, of specific property, real or personal, will retain control of the case and carry it to effect to the exclusion of a federal court to which the same controversy may thereafter be presented, essentially by or between the parties to the state court action. Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226.[8] But it may not correctly be broadly asserted that in no event may the intervention of bankruptcy affect the jurisdiction of the state court. Thus in Re Winter, D.C.Mich, 17 F.2d 153, 154, which involved, and sustained, the validity of state court proceedings pending at the filing of petition in bankruptcy for the recovery of the possession of land theretofore sold to the debtor on contract with the reservation of the right of repossession for default, in which no stay was demanded because of bankruptcy and after adjudication a decree was entered, the court expressly excepted from the stated rule, cases involving "rights * * * voidable under * * * the Bankruptcy Act". Upon this principle, cases are presently irrelevant which involve such matters as the demand in a state court suit pending at the onset of bankruptcy, for the recovery by a defrauded vendor of property purchased on credit by the debtor through a fraudulent credit statement; Linstroth Wagon Co. v. Bal-

---

[8] Which, incidentally, did not involve bankruptcy jurisdiction, and while documenting and recognizing the rule advert-
ed to, declined to apply it, because the Kline-Burke case was exclusively in personam.

lew, 5 Cir., 149 F. 960, 8 L.R.A.,N.S., 1204; proceedings instituted even within the four months' period to foreclose or otherwise enforce liens obtained before the beginning of the four months' interval, Johnson v. Burke Manor Bldg. Corp., 7 Cir., 48 F.2d 1031, 83 A.L.R. 1273; Atlanta Flooring & Insulation Co. v. Russell, 5 Cir., 145 F.2d 493, rehearing denied 146 F.2d 884, certiorari denied 325 U.S. 862, 65 S.Ct. 1202, 89 L.Ed. 1983.[9] Lion Bonding Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 490, 67 L.Ed. 871 rejected, as against the prior possession of a Nebraska receiver, appointed by a state court over a Nebraska insurance company, the demand for possession of the corporation's assets made by a receiver appointed later for the corporation in an equity proceeding in the Minnesota Federal court. Actually, the Supreme Court reversed for want of the jurisdictional amount in controversy the appointment of the Minnesota receiver, and, thereupon, denied and rejected his demand upon the Nebraska receiver for the possession of the corporation's assets. Bankruptcy jurisdiction was neither invoked nor involved.

The creditor also correctly insists that circumstances may exist in which a state court has jurisdiction over a debtor's property which must be respected by a bankruptcy court in which he later institutes a bankruptcy proceeding. But that rule, and the cases he cites to sustain it may not be allowed to support him in this controversy. While Judge Walter Sanborn's opinion in Martin v. Oliver, 8 Cir., 260 F. 89, emphasized the necessity under the former statute (section 67, sub. f) of a summary proceeding to accomplish the invalidation of a lien within its terms, it was concurred in only to the extent that it vindicated the right of a state court to proceed to final judgment and sale under a levy made within four months of bankruptcy, where the bankruptcy was never brought to the state court's attention and the execution debtor's insolvency at the time of levy was never raised before it.

See also Jones v. Springer, 226 U.S. 148, 33 S.Ct. 64, 57 L.Ed. 161. In re Rhodes, D.C.Ohio, 109 F. 117 involved a state court receivership, and In re Naslund, D.C. Wash, 6 F.Supp. 109, a probate proceeding over the estate of the debtor's deceased wife, both pending long prior to the statutory four months' period. To essentially like effect is also In re Dayton Coal & Iron Co., D.C.Tenn., 291 F. 390. In re Rabb, supra, is merely one of the cases decided under the former section 67, sub. f in which its application to exempt property is denied and the absence of any jurisdiction of the bankruptcy court over exempt property, once it is set off, is declared.

No discussion need be offered respecting the creditor's proposition that a bankrupt's discharge does not avoid a valid lien upon the exempt property set off to him, or intercept the enforcement of the lien. That is undoubtedly true. But the present case is not concerned with the matter of a discharge. The creditor, under those assignments of legal principle, more directly argues that, in practical effect no jurisdiction or procedure is available whereby, in his own name, and in this court, the bankrupt may seek the absolution of his exempt property from the creditor's lien obtained within four months before the filing of the petition. But, in the main, his authorities either deal with proceedings to enforce liens antedating the four months' period or, occurring before September 22, 1938, apply the construction, and the jurisdictional and procedural inadequacies of the former statute already adverted to.

The situation in the two state court cases in which the bankrupt was involved at the initiation of this proceeding is variously invoked as a barrier to this court's summary jurisdiction in the premises, and, with special reference to the Municipal Court's ruling on the debtor's claim of the exemption of his truck as a tool or instrument of trade or business, as res adjudicata upon that question.

---

[9] In the cited case, the state court proceeding was also actually started more than four months before the filing of the petition in involuntary bankruptcy. See also in relation to the same bankruptcy, Atlanta Flooring & Insulation Co. v. Oberdorfer Ins. Agency, 5 Cir., 136 F. 2d 457.

428

At least three considerations seem to reject the contention in both of its branches. They are, first, the admitted insolvency on August 17, 1948 of the debtor; secondly, the constitutional grant of power to the congress, "to establish * * * uniform Laws on the subject of Bankruptcies throughout the United States", Constitution Article I, Section 8; and, finally, Section 67, sub. a, of the Bankruptcy Act of June 22, 1938 enacted in pursuance of that authority, with its substantive and jurisdictional and procedural provisions.

■ The creditor, in moving to obtain in the state court, a lien under a levy upon the truck of his insolvent debtor, must be held to have proceeded under the threateningly nullifying shadow of the constitutional and statutory language. And the state courts in which the several proceedings were filed must be considered to have had in view the potential impact upon their several jurisdictions and powers, of a voluntary bankruptcy proceeding thereafter instituted, actually under the spur of their own proceedings. If the statutory four months' period from the attachment of the lien under the levy had been suffered to elapse without bankruptcy, the lien would have become unassailable. That hypothesis failing, the summary jurisdiction of this court has arisen. And it is not to be balked or controlled by the status of the cases in the Lincoln city and Nebraska state courts.

■ To the argument that the change in the debtor's business or occupation between the levy and the filing of the petition in bankruptcy ought not to impair the creditor's position as a lienholder, two answers seem to be valid. For the purposes of this court in bankruptcy, exemptions are determinable upon the basis of the facts as they exist at the time of the filing of the petition in bankruptcy. See Goggin v. California Labor Board, 336 U.S. 118, 69 S.Ct. 469, and cases therein cited. It is true that the Goggin case involved the application of Section 67, sub. c, of the present act. But the application was made in harmony with the uniform rule upon the subject. A change of employment by his insolvent debtor within the statutory four months' period after his levy was another contingency which the creditor must be held to have envisioned as clearly possible. Then, too, the intervention of an exempt status in respect of the truck was not a factor which impaired, or even contributed to the impairment of, the creditor's lien upon it, or changed the forum in which that lien might be invalidated. That event merely determined on whose petition and for whose ultimate benefit the jurisdiction of this court should be invoked and exercised. For, by Section 67, sub. a(1) "every lien against the property" of the debtor within the definition of the section was formally declared null and void, and actually and practically exposed to the peril of judicial nullification.

■ With particular reference to the effect of the two separate pending city and state court actions, it may be well, finally, to make clear that the summary jurisdiction of this court and the course of its exercise do not assume, or rest upon, any improper or erroneous action of the court in which the challenged lien was obtained. The statute denounces alike, liens within its definition which carry some substantive or procedural infirmity and those which have been obtained with unassailable propriety and regularity. It simply introduces for its own purposes the nullifying factors of the obtaining of the lien by judicial proceedings within the defined period of four months and the debtor's insolvency when it is thus obtained. *Every lien* obtained under those circumstances is voidable, however valid and unassailable it might otherwise be.

The filing on the day after the levy, of the previously executed chattel mortgage, supra, in no wise, enters into or controls the course of the present ruling. The court is not yet called upon to consider its posture as a lien upon the truck, notwithstanding the determination of the truck's exempt status.

Nor does the Referee's ruling assume to direct the course hereafter of the district court replevin action, or to inquire into its own effect upon that proceeding.

The exceptions are being denied and overruled and Referee's order is being affirmed.